Patricia THOMAS, et al.,
Plaintiffs-Appellees,

v.

CAPITAL SECURITY SERVICES, INC.,
Defendant-Appellant.

No. 86–4480.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1988.

---

**3.** The Government dropped Count 24.

M. Curtiss McKee, Jackson, Miss., for defendant-appellant.

Deborah A. McDonald, Natchez, Miss., Mary Brown, Willie L. Rose, McComb, Miss., George C. Cochran, University of Mississippi, University, Miss., for plaintiffs-appellees.

Before CLARK, Chief Judge, and GEE, RUBIN, REAVLEY, POLITZ, CAROLYN DINEEN KING,[*] JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, and SMITH,[**] Circuit Judges.[***]

JOHNSON, Circuit Judge:

In view of the high import of Rule 11 to both the bench and bar, this Court took the instant case en banc to resolve any inconsistencies between previous opinions in this Circuit regarding procedures and standards for the imposition of sanctions under Rule 11, as amended in 1983.

## I. FACTS AND PROCEDURAL HISTORY

On October 19, 1984, the plaintiffs-employees filed suit against their former employer Capital, alleging that Capital had engaged in a wide variety of racially and sexually motivated discriminatory practices in such areas as hiring, promotions, terminations, and on-the-job treatment. The plaintiffs based their suit on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the thirteenth amendment. Additionally, the plaintiffs filed a class action on behalf of all similarly situated black women who were, had been, or would be employed by Capital.

Ultimately, Capital prevailed on the merits of the litigation after a three day bench trial. As the facts regarding the disposition of the main litigation are accurately set forth by the panel opinion, they are not reiterated at this time. *Thomas v. Capital Security Systems, Inc.*, 812 F.2d 984, 986 (5th Cir.1987). However, we repeat, for purpose of clarity, that portion of the panel opinion discussing the disposition of Capital's subsequent motion for attorney's fees.

On April 7, 1986, after the plaintiffs had appealed the case-in-chief to this Court, Capital requested an award of attorney's fees against the plaintiffs and their attorneys. Capital's motion was based upon Fed.R.Civ.P. 11, 28 U.S.C. § 1927, 42 U.S.C. § 1988, 42 U.S.C. § 2000e–5(k), and the inherent equitable powers of the district court. Capital asserted that an award was appropriate because the plaintiffs and their attorneys had expanded their judicial allegations far beyond the scope of their EEOC complaints, filed a class action but failed to later certify the class, withdrew from settlement negotiations, and added seven new witnesses to the court's pretrial order two weeks before trial; Capital also asserted that plaintiffs' attorneys prosecuted the action in a mistaken belief that they were required to act in only subjective good faith and presented irrelevant evidence at trial.

On June 10, 1986, the district court denied the motion. While denying the motion, the court noted that the situation presented a close question. Most of the court's discussion centered upon whether

---

[*] Formerly Judge Carolyn Dineen Randall.

[**] Judge Jerry E. Smith did not participate in the oral argument of this case but did, upon taking office on January 7, 1988, participate in the determination of this case.

[***] Judge Robert M. Hill participated in the oral argument of this case but, due to his death on October 19, 1987, did not participate in this decision.

the plaintiffs and their attorneys had violated Fed.R.Civ.P. 11. The court noted that the broad or "shotgun" allegations contained in the plaintiffs' complaint appeared to evidence a lack of inquiry by the plaintiffs' attorneys into the law and supporting facts. The court, however, stated that it was reluctant to impose sanctions because of the unsettled nature of the law in regard to the breadth of a judicial complaint based upon a narrower EEOC complaint.

*Id.*

On appeal, a panel of this Court affirmed in part and vacated in part the district court's decision regarding Capital's motion for attorney's fees. Specifically, the panel, applying a de novo standard of review to the district court's Rule 11 determination, held that Rule 11 imposes upon attorneys several affirmative duties, including the continuing obligation to reevaluate one's litigation position. Furthermore, the panel recognized the mandatory character of Rule 11, concluding that once a violation of Rule 11 occurs, it is incumbent upon the district court to assess some type of sanction upon the offending litigant. Finally, the panel held that district courts must now furnish specific findings of fact and conclusions of law for all Rule 11 decisions, which should reflect an assessment by the district court of an attorney's compliance, or lack thereof, with each of the affirmative obligations of Rule 11.

The panel concluded that, as to Capital's Rule 11 claim, a remand was appropriate due to the ambiguous language of the district court's order indicating that the district court may have found a Rule 11 violation, but nevertheless chose not to impose sanctions. The panel reasoned that the decision not to impose sanctions was no longer an available option to a district court once a Rule 11 violation occurred. In this regard, the panel stressed that mandatory findings and conclusions by the district court were "particularly crucial," since they would serve as the foundation for the court's de novo review of whether Rule 11's provisions had been violated.

## II. DISCUSSION

### A. *Amended Rule 11*

In recent years, Fed.R.Civ.P. 11 has generated extensive debate and controversy among legal scholars, jurists, and practitioners. Originally enacted in 1937, Rule 11, as amended in 1983, currently provides in pertinent part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.[1]

Despite its laudable goals, Rule 11 was rarely applied before its amendment in

---

1. Rule 11, prior to the 1983 amendments, was significantly different, providing in pertinent part:

 The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading

1983. Growing concern over misuse and abuse of the litigation process prompted rulemakers to amend Rule 11 in 1983 to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions. Fed.R.Civ.P. 11 advisory committee notes.[2] Former Rule 11 provided that an attorney's signature acted as a certificate by the attorney "that to the best of his knowledge, information, and belief there is good ground to support [the motion]," and the standard by which to assess attorney conduct for Rule 11 purposes was a subjective good faith standard, contemplating sanctions only when there was a showing of bad faith on the part of the attorney. Amended Rule 11 changed the rule by requiring that the attorney's certification must be formed "after reasonable inquiry," thereby defining a standard of reasonableness under the circumstances by which to measure attorney conduct.

In addition to the requirement of a reasonable prefiling inquiry, Judge Schwarzer, in his article *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R. D. 181 (1985), notes further changes effected by amended Rule 11 from its predecessor, including: (1) the rule now applies to all papers filed in court, not only pleadings; (2) the rule applies to persons appearing pro se as well as to attorneys and parties; (3) the rule specifies that papers filed must be well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law; and (4) the rule specifies that papers may not be interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *Id.* at 184–85. One further important difference between former Rule 11 and Rule 11, as amended in 1983, is the latter's mandatory character, directing district courts to impose a sanction once a violation of Rule 11 has occurred. While the type of sanction imposed lies within the discretion of the district court, amended Rule 11 expressly authorizes an award of reasonable expenses, including attorney's fees, as an appropriate sanction.[3]

---

had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action.
Fed.R.Civ.P. 11, 28 U.S.C. (West 1960).

2. Chief Justice Warren Burger, in his 1976 keynote address to the Pound Conference, expressed concerns that the legal profession was permitting abuse and misuse in the litigation process, stating "[c]orrect or not, there is also a widespread feeling that the legal profession and judges are overly tolerant of lawyers who exploit the inherently contentious aspects of the adversary system to their own private advantage at public expense." Address by Chief Justice Warren Burger, *Agenda for 2000 A.D.—Need for Systematic Anticipation,* National Conference on the Causes of Popular Dissatisfaction with the Administration of Justice (April 7–9, 1976) (conference commemorating Roscoe Pound's address to American Bar Association in 1906 Annual Meeting), *reprinted in* 70 F.R.D. 79, 91 (1976).

Rule 11 was only one of several rules amended in 1983 to deter the abuse and misuse in litigation. Rule 16 was amended to promote greater judicial management over civil cases from their inception by narrowing the scope of the litigation and expediting the disposition of cases, thereby reducing expense and delay. 97 F.R.D. 190, 192–93 (1983) (Letter from Walter R. Mansfield, Chairman, Advisory Committee on Civil Rules to Judge Edward T. Gignoux, Chairman, and Members of the Standing Committee on Rules of Practice and Procedure.). *See also* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 183 (1985). Amended Rule 26 was intended by rulemakers to protect against excessive discovery and evasion of reasonable discovery demands. *Mansfield Letter,* 97 F.R.D. 190. Rule 11 was amended to minimize abuse in the signing of legal papers by setting forth a more precise definition of the standards to be met by a signing party or attorney and mandating sanctions if those standards were not met. *Id.*

3. In addition to Rule 11, several other statutory and procedural provisions exist whereby a court may deter litigation abuse. For instance, 28 U.S.C. § 1927 permits a court to assess against an attorney who so multiplies the proceedings in any case unreasonably and vexatiously the excess costs, expenses, and attorney's fees incurred as a result of such conduct. Further, Fed.R.Civ.P. 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery. In civil rights actions, a court, in its discretion, may award the prevailing party a reasonable attorney's fee as part of the costs pursuant to 42 U.S.C. § 1988.

Furthermore, as previously noted, Rules 16 and 26 deter abuse in litigation by providing

As Rule 11 cases begin to emerge in the wake of the 1983 amendments, it is apparent that courts are no longer reluctant to impose sanctions on attorneys and litigants who stray from their obligations under the rule. However, Rule 11 decisions by courts have not always been consistent, producing confusion among the bench and bar, as well as inequitable results.[4] By our opinion today, we seek to ameliorate this confusion and modify existing inequities to the extent possible by clarifying some of the more important issues presented by the application of Rule 11 in this case.

### B. *Standard of Review*

■ As a threshold matter, the appropriate standard of review to utilize when assessing a district court's ruling on Rule 11 sanctions must be determined. Rule 11 provides that if a paper is signed in violation of the rule, "the court ... shall impose ... an appropriate sanction...." Fed.R. Civ.P. 11. The rule itself does not set forth a specific standard of review for Rule 11 decisions; however, the Advisory Committee recognized the necessity of retaining discretion for such decisions in the district court when it pronounced,

> And the words "shall impose" in the last sentence focus the court's attention on the need to impose sanctions for pleading and motion abuses. The court, however, retains the necessary flexibility to deal appropriately with violations of the rule.

It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.

Fed.R.Civ.P. 11 advisory committee notes.

In this regard, one line of authority in this Circuit established a single abuse of discretion standard to be applied across-the-board to all of the issues ruled on in Rule 11 cases. In *Davis v. Veslan Enterprises*, 765 F.2d 494 (5th Cir.1985), we stated, "[i]n determining whether the district court erred in imposing such sanctions, this Court's review is limited to determining whether the district court abused its discretion." *Id.* at 498. *See also Bell v. Bell*, slip. op. at 2179 (5th Cir. Sept. 17, 1986); *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir.1986).

However, in a recent decision, *Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987), this Circuit appeared to depart from its previous application of the abuse of discretion standard and opted instead for a more demanding, differentiated standard of review encompassing three tiers of analysis.

> In reviewing an order imposing sanctions, we must examine the aspect of the order that is being reviewed. Findings of fact used by the district court to determine that rule 11 has been violated are reviewed under the *clearly erroneous* standard. The legal conclusion of the

procedures for effective judicial management of pretrial and discovery. Finally, under its inherent power, a district court may award to the prevailing party reasonable attorney's fees upon a showing that an attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Batson v. Neal Spelce Associates*, 805 F.2d 546, 550 (5th Cir.1986).

In addition to district courts, appellate courts may also impose sanctions in the form of single or double costs against an appellant who brings a frivolous appeal. Fed.R.App.P. 38. Tax courts also possess the power to deter abuse by imposing damages, not to exceed $5,000.00, against taxpayers who have asserted a frivolous or baseless claim, or have filed a claim only for purposes of delay. 26 U.S.C. § 6673.

**4.** At least one group, the Center for Constitutional Rights, has undertaken a national project to gather information concerning implementation of Rule 11, thereby providing a vehicle for

changes in the rule. In conjunction with the proposal for that project, a memorandum was prepared which recited, among other complaints, that (1) the plaintiffs bar in general and the civil rights bar in particular are the primary victims of Rule 11; (2) there is no correlation between the imposition of sanctions in the form of fee shifting and legitimate objectives such as speedier trials and upgrading the professional behavior of attorneys practicing in federal court; (3) when faced with an identical set of facts, federal judges are in disagreement as to whether or not a Rule 11 violation has occurred; and (4) although one goal sought to be attained through the increased use of sanctions was to ameliorate the caseload crisis, the result has been increased satellite litigation which heretofore would not have been appealed. George Cochran, *Recent Developments in Response to Rule 11 Problems*, 9 Cornerstone 1 (November/December 1987).

district court that a particular set of facts constitutes a violation of rule 11 is reviewed *de novo*. The amount and type of the sanction imposed is examined under the *abuse of discretion* standard. *Id.* at 1125–26 (emphasis added and citations and footnote omitted). Attempting to reconcile this new three-tiered standard of review with the Court's previous line of decisions under *Davis,* the *Robinson* Court distinguished subsidiary facts used by the district court to determine that Rule 11 has been violated from the ultimate question of whether a particular set of facts constitutes a violation of Rule 11. The *Robinson* Court applied a deferential abuse of discretion standard to the subsidiary findings of the district court, such as whether bad faith or dilatory reasons were present which would give rise to Rule 11 sanctions, but applied a de novo analysis to the ultimate conclusion as to whether Rule 11 had been violated.

Additionally, the Court in *Robinson* placed great emphasis on the mandatory language of Rule 11 which provides that "[i]f a pleading, motion, or other paper is signed in violation of [Rule 11], the court ... *shall impose* ... an appropriate sanction ..." reasoning that such mandatory language dictated de novo review. Fed.R. Civ.P. 11 (emphasis added). In conformity with the *Robinson* opinion, the panel in the instant case also applied the three-tiered differentiated standard of review to the district court's denial of sanctions.

There is also a divergence of opinion among the circuits as to the proper standard of review to be applied to Rule 11 decisions by district courts. The Ninth Circuit established the three-tiered analysis adopted in *Robinson. Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir. 1986). *See also Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1434 (7th Cir.1987). Other circuits apply a variation of the three-tiered analysis espoused in

*Zaldivar,* utilizing an abuse of discretion standard when reviewing the factual reasons for imposing Rule 11 sanctions and the amount and type of sanctions, while reserving a de novo analysis for reviewing the legal sufficiency of a pleading or motion and the determination to impose sanctions. *See Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (en banc); *Westmoreland v. CBS,* 770 F.2d 1168, 1175 (D.C.Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985), *cert. denied,* — U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).[5] Still others have employed the across-the-board abuse of discretion standard. *See O'Connell v. Champion International Corp.,* 812 F.2d 393, 395 (8th Cir.1987); *EBI, Inc. v. Gator Industries, Inc.,* 807 F.2d 1, 6 (1st Cir.1986); *Cotner v. Hopkins,* 795 F.2d 900, 903 (10th Cir.1986); *Stevens v. Lawyers Mutual Liability Ins. Co.,* 789 F.2d 1056, 1060 (4th Cir.1986); *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3d Cir.1986).

After careful consideration of the policies behind Rule 11, we believe application of an abuse of discretion standard across-the-board to all issues in Rule 11 cases is the better approach. Although the imperative character of the language "shall impose" in the rule carries with it the natural concomitant that mandatory sanctions broaden the scope of appellate review, we do not interpret the amended rule to remove from the district court the discretion which it must enjoy to effectively regulate its courtroom. In this regard, Judge Schwarzer observes

> [t]hat the problems giving rise to the rule may be urgent does not diminish the critical role of discretion in the exercise of judicial power under the rule. The decision whether to impose sanctions and what they should be will turn on an assessment of the gravity of the conduct at issue.

---

**5.** *But see Adams v. Pan American World Airways, Inc.,* 828 F.2d 24, 32 (D.C.Cir.1987) where the court refused to overturn a district court's denial of sanctions stating that "we may overturn [the district court's] ruling only if it abused its *'wide discretion'* to determine whether grounds exist to support Rule 11 sanctions." (emphasis added).

*Schwarzer,* 104 F.R.D. at 200.[6]

We likewise believe that the imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity alleged to be a violation of Rule 11. The perspective of a district court is singular. The trial judge is in the best position to review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis. We can perceive of no advantage that would result if this Court were to conduct a second-hand review of the facts from the trial court level, as "the district court will have a better grasp of what is acceptable trial-level practice among litigating members of the bar than will appellate judges." *Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558, 566 (E.D.N.Y.1986).[7]

In a recent publication by the American Bar Association surveying the law of sanctions as it has developed since Rule 11 was amended in 1983, the author notes that those courts advocating de novo review are probably doing so in an effort to promote uniformity in the imposition of sanctions, "but the goal of uniformity may be no better served by the de novo standard because many sanctions cases are fact-intensive, close calls. Furthermore, the complexity of the three-tiered standard creates additional work for district courts and additional issues for appeal. The abuse of discretion standard is preferable...." C. Shaffer, Jr. and P. Sandler, *Sanctions: Rule 11 and Other Powers,* at 28–29 (2d ed. 1987) (citation omitted).

Of course, legal issues may be subsumed within a group of issues generated by a district court's decision on sanctions. For instance, the actions of a litigant may be so egregious when considered in the light of prior decisions by this Court upholding or denying the imposition of sanctions, that those actions become per se violative of Rule 11 as a matter of well-established legal precedent. We emphasize, however, that the overall umbrella remains abuse of discretion. To hold otherwise would transform an appellate court into a trial court where attorneys' and litigants' conduct would be reviewed as if those individuals were litigating their case initially on the appellate level. This cannot be the result contemplated by the rulemakers when they amended Rule 11 in 1983. Appellate courts are not replacements for district courts and we decline to adopt a standard of review in Rule 11 cases which would effectively usurp the discretion of district courts.

## C. *Attorneys' Obligations Under Rule 11*

Having determined the appropriate standard of review in Rule 11 cases, we now turn to the obligations imposed upon litigants and their counsel under the amended rule. Consistent with the purpose of the 1983 amendments, this Court has held that Rule 11 compliance is now measured by an objective, not subjective, standard of reasonableness under the circumstances. *Robinson,* 808 F.2d at 1127; *Davis,* 765 F.2d at 497.[8] "An attorney's good faith is no longer enough to protect him from rule 11 sanctions." *Robinson,* 808 F.2d at 1127.

It is well established that Rule 11 imposes the following affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion, or other document.

6. In *O'Connell,* 812 F.2d at 395, the court stated "[r]ule 11 makes sanctions mandatory when a violation of the Rule occurs, but whether a violation has occurred is a matter for the court to determine, and this determination involves matters of judgment and degree."

7. The Eighth Circuit has recognized that a proper determination in Rule 11 cases "rests upon and is informed by the District Court's intimate familiarity with the case, parties, and counsel, a familiarity we cannot have. Such a determination deserves substantial deference from a reviewing court." *O'Connell,* 812 F.2d at 395. Indeed, one panel in our Circuit has characterized the three-tiered analysis of *Thomas* as *more intrusive* than the abuse of discretion standard. *Shivangi v. Dean Witter Reynolds, Inc.,* 825 F.2d 885, 891 (5th Cir.1987).

8. Other circuits have likewise determined that Rule 11, as revised in 1983, imposes an objective standard of reasonableness. *Zaldivar,* 780 F.2d at 829; *Eastway,* 762 F.2d at 253–54.

(1) that the attorney has conducted a reasonable inquiry into the facts which support the document;

(2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument "for the extension, modification, or reversal of existing law;" and

(3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation.

In addition to the aforementioned duties, the instant panel imposed upon a certifying attorney the continuing obligation to review and reevaluate his position as a case develops.[9]

■ While sympathizing with the concerns that prompted previous panels in our Circuit to hold to the contrary, we depart from language in the instant panel's opinion and earlier decisions by this Court that impose upon an attorney a continuing obligation under Rule 11. Instead, we believe that a construction of Rule 11 which evaluates an attorney's conduct at the time a "pleading, motion, or other paper" is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule. Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document. Rule 11 was promulgated for a particular purpose—to check abuses in the signing of pleadings. Fed.R.Civ.P. 11 advisory committee notes.

Our interpretation of Rule 11 finds support in the fact that Rule 11 has as its primary focal point the certification made by an attorney that he has complied with the affirmative duties imposed by the rule at the moment he affixes his signature to a pleading, motion, or other paper in a lawsuit. The rule itself is titled *"Signing* of Pleadings, Motions, and Other Papers; Sanctions." (Emphasis added). Furthermore, the express language of Rule 11 provides that "[t]he *signature* of an attorney or party constitutes a certificate by the signer that" he has complied with the obligations imposed by Rule 11. Fed.R.Civ.P. 11 (emphasis added). In addressing this issue, the Second Circuit reached a similar conclusion, stating

[r]ule 11 applies only to the initial signing of a "pleading, motion, or other paper." Limiting the application of rule 11 to testing the attorney's conduct at the time a paper is signed is virtually mandated by the plain language of the rule. Entitled "Signing of Pleadings, Motions, and Other Papers; Sanctions", the rule refers repeatedly to the signing of papers; its central feature is the certification established by the signature.

*Oliveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).[10]

Moreover, the advisory committee notes to the amended rule support our conclusion that Rule 11 applies only to the signing of pleadings and imposes a standard of good faith and reasonable investigation as of the date of that signing. Specifically, the com-

---

**9.** This Court previously stated that "[parties] are not required by Rule 11 or § 1927 to voluntarily dismiss their claims. It is enough that they do not oppose [another party's] efforts to secure summary dismissal of the claims." *Jackson Marine Corp. v. Harvey Barge Repair, Inc.,* 794 F.2d 989, 992 (5th Cir.1986). Under the continuing obligation rule established by *Robinson* and followed by our panel's decision, an attorney, upon discovering that a good faith basis for a document no longer exists, must take the necessary actions to ensure that the proceedings do not continue without a reasonable basis in law and fact. *Robinson,* 808 F.2d at 1127. Thus, the continuing obligation of an attorney under Rule 11 has gradually evolved from a passive obligation of nonresistance to an active duty requir-

ing a litigant to withdraw a once valid, but now frivolous and baseless claim.

**10.** *See also Hamer v. County of Lake,* 819 F.2d 1362, 1370 n. 15 (7th Cir.1987) (reiterating rule that Rule 11 does not impose a continuing obligation on attorneys to reevaluate the merits of the case as the litigation develops); *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.,* 809 F.2d 451, 454 (7th Cir.1987) (holding Rule 11 does not require revisions of pleadings to conform with newly discovered information); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th Cir.1986) (court must "look at the situation which existed when the paper was filed").

mittee notes provide that "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed.R.Civ.P. 11 advisory committee notes. The rulemakers later comment that in considering the nature and severity of the sanction to be imposed under Rule 11, the court should consider the state of mind of the attorney "when the pleading or other paper was signed." *Id.*

■ As a practical matter, while the review of an attorney's conduct for Rule 11 purposes is isolated to the moment the paper is signed, virtually all suits will require a series of filings. This series of filings may indicate a pattern of attorney conduct of some consequence. On the other hand, one or more of the filings may indicate attorney conduct entirely different from that reflected by previous filings. In any event, Rule 11 applies to each and every paper signed during the course of the proceedings and requires that each filing reflect a reasonable inquiry.[11]

Ample protection from the use of abusive tactics in litigation in respects other than the signing of papers is provided by other rules governing attorney conduct. For instance, section 1927 imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim.[12] Discovery papers are regulated by Rule 26(g), and affidavits accompanying motions for summary judgment are governed by Rule 56(g). Finally, pursuant to its inherent power, a district court may award reasonable attorney's fees to the

prevailing party when the losing party has acted in bad faith in actions that led to the lawsuit or in the conduct of the litigation. *See Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *Batson,* 805 F.2d at 550.

■ Rule 11 is restricted to the signing of pleadings, motions, and other papers imposing upon attorneys and litigants its affirmative duties as of the date a document was signed.[13] In ruling on Rule 11 motions, district courts within our Circuit must determine if the individual who has certified the document purported to be violative of Rule 11 has complied with all of the affirmative duties imposed by the rule. The determination of whether a reasonable inquiry into the facts has been made in a case will, of course, be dependent upon the particular facts; however, the district court may consider such factors as the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support for the document; the feasibility of a prefiling investigation; whether the signing attorney accepted the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery. As to the determination of whether a reasonable inquiry into the law has been made, a district court may consider the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the pro se status of a litigant; and

---

11. As the Second Circuit has noted in a decision rejecting the continuing obligation under Rule 11:

> While the drafters of the rule could easily have further extended its application by referring to the entire conduct of the proceedings, they failed to do so and instead chose to expand only the categories of papers to which the rule applies.

*Oliveri,* 803 F.2d at 1274.

12. 28 U.S.C. § 1927 provides in pertinent part: Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and at-

torneys' fees reasonably incurred because of such conduct.

13. Our conclusion in this regard is consistent with our holding in *Robinson* that an attorney must *sign* a document to have Rule 11 sanctions imposed upon him. *Robinson,* 808 F.2d at 1129. Both our decision today regarding a continuing obligation under Rule 11 and the *Robinson* pronouncement confining the imposition of sanctions to signatories recognize that the primary focus of Rule 11 is the implicit certification made by an attorney when he signs a legal document.

the complexity of the legal and factual issues raised.

### D. *Mandatory Application of Sanctions*

■ Rule 11 provides that "[i]f a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall impose* ... an appropriate sanction...." Fed.R. Civ.P. 11 (emphasis added). In *Bell v. Bell,* a panel of this Court found no abuse of discretion on the part of the district court in finding no sanction as the appropriate sanction for a Rule 11 violation. The *Bell* Court stated "[w]e are not constrained to say that the district court must, upon the establishment of a violation of the rules at issue here, impose some sort of sanction however nominal." *Id.* at 2178 (footnote omitted). Subsequent to the *Bell* decision, in *Robinson,* another panel of this Circuit found that where a district court determines an attorney's conduct to be violative of Rule 11, that court must then fashion an appropriate sanction in accordance with the dictates of Rule 11. *Robinson,* 808 F.2d at 1130–31. We adopt the *Robinson* rule. There are no longer any "free passes" for attorneys and litigants who violate Rule 11. Once a violation of Rule 11 is established, the rule mandates the application of sanctions. This appears to be the only construction consistent with the plain language of the rule.

When Rule 11 was amended in 1983 to include the mandatory "shall" language regarding the imposition of sanctions, the rulemakers inserted such language in an attempt to combat the reluctance of judges to impose sanctions on their fellow professionals. This reluctance on the part of the judiciary to impose sanctions has been explained as stemming from judges' sympathy, as former practitioners, for the pressures on lawyers in the adversarial system, concern that available sanctions would punish the client, and uncertainty as to whether judges could impose sanctions on their own initiative. Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment,* 74 Geo. L.J. 1313, 1321–22 (1986).[14] One commentator notes "[b]y making sanctions mandatory, the drafters of rule 11 sought to discourage any collegial inclination to overlook or minimize violations" and to "maximize the deterrent effect of sanctions." *Id.* at 1322. The drafters of the amended rule employed mandatory language, thereby declining to afford district courts the discretion to conclude that sanctions are unwarranted and to deny them. In contrast, under 28 U.S.C. § 1927 and the court's inherent powers, the court enjoys such discretion.[15]

■ In concluding that Rule 11 requires the imposition of sanctions once a violation has been found, however, we stress that

[b]y employing the imperative "shall," we believe the drafters intended to stress the mandatory nature of the imposition of sanctions pursuant to the rule. Unlike the statutory provisions that vest the district court with "discretion" to award fees, Rule 11 is clearly phrased as a directive. Accordingly, where strictures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions.

*See also Albright v. Upjohn Co.,* 788 F.2d 1217, 1222 (6th Cir.1986) (Rule 11 expressly mandates the imposition of sanctions once a violation is found.); *Westmoreland,* 770 F.2d at 1174 (Under amended Federal Rule of Civil Procedure 11, however, the new provision that the court "shall impose" sanctions mandates the imposition of sanctions when warranted by groundless or abusive practices.).

**14.** The extent to which judges were reluctant to impose sanctions prior to the 1983 amendments to Rule 11 is evidenced by the fact that between 1938 and 1976, Rule 11 motions had been filed in only nineteen reported cases. Among those cases, violations were found in only eleven instances, and attorneys sanctioned in only three. S. Kassin, *An Empirical Study of Rule 11 Sanctions* 2 (Fed.Jud. Center 1985). Through 1979, there was only one additional reported opinion in which a sanction was imposed pursuant to Rule 11. *Id.* In contrast, after Rule 11 was amended in 1983, there were, between August 1, 1983 and August 1, 1985, more than 200 reported cases involving Rule 11 sanctions. *Nelken,* 74 Geo.L.J. at 1326 (1986).

**15.** Other circuits have likewise recognized the mandatory character of sanctions pursuant to amended Rule 11. In *Eastway Constr. Corp.,* 762 F.2d at 254 n. 7, the Second Circuit held

the district court is vested with considerable discretion in determining the "appropriate" sanction to impose upon the violating party. Rule 11 explicitly authorizes such discretion in the district court by containing the word "appropriate" in the language of the rule. While attorneys' fees and reasonable expenses are expressly provided for by the rule as appropriate sanctions, the court possesses the discretion to tailor sanctions to the particular facts of the case. Fed.R.Civ.P. 11 advisory committee notes. "Once a violation of Rule 11 has been found, sanctions are mandatory. Judges, however, have broad discretion in choosing the appropriate penalty...." Cavanagh, *Developing Standards Under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L.Rev. 499, 500 (1986).

An examination of the history behind the 1983 amendments to Rule 11 indicates that the rulemakers inserted the discretionary language in Rule 11 in response to concerns that mandatory sanctions would chill the adversarial process. The advisory committee notes expressly disclaim any intent to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.[16] At the hearings on the 1983 amendments to Rule 11, Judge Mansfield, the Advisory Committee Chair, answered such concerns by stating that a judge would have discretion to impose a "de minimis" sanction. *Hearings on Proposed Amendments to the Federal Rules of Civil Procedure*, Advisory Committee on Civil Rules (Washington, D.C. Oct. 16, 1981) (unpublished transcript on file at *Georgetown Law Journal*). Thus, it can be inferred that the broad discretion given district courts in determining sanctions was intended as a "safety valve" to reduce the pressure of mandatory sanctions.

The broad discretion afforded district courts is reflected in the numerous types of sanctions that may be imposed under Rule 11. As attorneys' fees and reasonable costs are expressly provided for by Rule 11, we recognize the natural tendency of district courts to gravitate toward imposing these types of sanctions. However, we would caution that

> [w]hether sanctions are viewed as a form of cost-shifting, compensating opposing parties injured by the vexatious or frivolous litigation forbidden by Rule 11, or as a form of punishment imposed on those who violate the rule, *the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule.*

*Donaldson*, 819 F.2d at 1556 (emphasis added). Sanctions should also be educational and rehabilitative in character and, as such, tailored to the particular wrong. To serve these multiple purposes behind Rule 11, the district court should carefully choose sanctions that foster the appropriate purpose of the rule, depending upon the parties, the violation, and the nature of the case.

District courts may choose to deter individuals who violate Rule 11 with monetary sanctions. One benefit of monetary sanctions is that they may be imposed exclusively against the attorney, thereby avoiding punishment of the client for attorney misconduct. Additionally, as to parties, financial penalties have been characterized as perhaps "the most effective way to deter a powerful and wealthy party from bringing frivolous or vexatious litigation" or from maintaining a baseless position in defense of another party's claim. *Id.* at 1557.

█ While monetary sanctions are appropriate under Rule 11, it is noted that

16. The extent to which the Advisory Committee recognized the necessity of affording the district court broad discretion regarding the selection of sanctions is reflected by the numerous factors the committee notes set forth as appropriate circumstances to consider when imposing sanctions. For instance, the notes mention the district court's consideration of the status of a litigant as represented or pro se; the state of mind of an attorney when the paper was signed; the length of time an attorney has to investigate a claim or defense; and whether the sanction should be imposed on the attorney personally, the client, or both. The district court "retains the necessary flexibility to deal appropriately with violations of the rule." Fed.R.Civ.P. 11 advisory committee notes.

this Court has previously held that the basic principle governing the choice of sanctions is that the least severe sanction adequate to serve the purpose should be imposed. *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 212–13 (5th Cir. 1976). *See also Reizakis v. Loy*, 490 F.2d 1132, 1136 (4th Cir.1974); *Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1339 (9th Cir.1970). We specifically adopt the principle that the sanction imposed should be the least severe sanction adequate to the purpose of Rule 11. Therefore, as a less severe alternative to monetary sanctions, district courts may choose to admonish or reprimand attorneys who violate Rule 11. In suggesting these as viable alternatives to monetary sanctions, we agree with Judge Schwarzer's comments cautioning trial judges not to forget the impact of such criticism.

> Judges are prone to forget the sting of public criticism delivered from the bench. Such criticism, while potentially constructive, can also damage a lawyer's reputation and career. The judge should take care, therefore, that what is said is commensurate with the violation. There is a distinction between bad practice and lack of integrity. Being guilty of the former does not invariably justify a charge of the latter. At the same time, enforcing Rule 11 is the judge's duty, albeit unpleasant. A judge would do a disservice by shying away from administering criticism or reproval where called for.

*Schwarzer*, 104 F.R.D. at 201–02. In an innovative approach, one district court required the errant attorney to circulate the court's opinion criticizing his conduct throughout his firm. *Heuttig & Schromm, Inc. v. Landscape Contractors Council*, 582 F. Supp. 1519 (N.D.Cal.1984), *aff'd*, 790 F.2d 1421 (9th Cir.1986). The educational effect of sanctions might be enhanced even by requiring some form of legal education.

While district courts may theoretically still dismiss baseless claims or defenses as sanctions, "such a dismissal is now better grounded, not on misconduct, but on the merits under Rules 12, 41, 55, and 56." *Schwarzer*, 104 F.R.D. at 204. Also, Rules 16 and 26 provide a more solid basis for taking such action in response to abusive practices by litigants. Finally, as to disciplinary action applied to an attorney under Rule 11, district courts should recognize a very real problem that might arise; due process considerations emerge if this type of penalty is applied. *Id.* [17]

In sum, a district court must impose sanctions once a violation of Rule 11 is found, but the district court retains broad discretion in determining the "appropriate" sanction under the rule. What is "appropriate" may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances. Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose.[18]

### E. *Mitigation of Fees and Expenses*

Rule 11 specifically permits the district court to order a party who violates Rule 11 to pay his opponent "the *reasonable expenses* incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11 (emphasis added). Therefore, according to the express language of Rule 11, in those cases in which such sanctions are imposed, the expenses reimbursed must

---

**17.** We recognize that due process considerations arise with other forms of sanctions as well; however, we do not address those considerations today. *See generally Donaldson*, 819 F.2d 1551; *Schwarzer*, 104 F.R.D. at 202–05.

**18.** Addressing this issue, the Third Circuit stated:

> Influenced by the particular facts of a case, the court may decide that the circumstances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand. In other cases, reference to a bar association grievance committee may be appropriate. The compensatory, punitive, and deterrent aspects of sanctions may have varying claims to priority, depending on the nature of the case and the violation, as well as on the standing of parties and counsel.

*Lieb*, 788 F.2d at 158.

(1) be found to have been caused by a violation of Rule 11, and

(2) be found to be reasonable.

■ What constitutes "reasonable expenses" and a "reasonable attorney's fee" within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation. In this respect, we note "reasonable" does not necessarily mean actual expenses. *INVST Financial Group v. Chem-Nuclear Systems*, 815 F.2d 391, 404 (6th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). *See also In re TCI Ltd.,* 769 F.2d 441, 448–49 (7th Cir.1985); *United Food & Commercial Workers v. Armour and Co.,* 106 F.R.D. 345, 349 (1985). One district court has characterized the relevant policy concerns underlying Rule 11 as follows:

> On the one hand, rule 11 sanctions are designed to deter frivolous lawsuits. Sanctions also insure, to a large degree, that victims of frivolous lawsuits do not pay the expensive legal fees associated with defending such lawsuits....
>
> On the other hand, rule 11 only authorizes "reasonable" fees, not necessarily actual fees. Thus, "[t]he assessment of fees against a nonprevailing litigant must be fair and reasonable based upon the particular circumstances of the case."

*United Food,* 106 F.R.D. at 348–49 (citations omitted).

■ The "reasonableness" finding necessarily embraces an inquiry by the court as to the extent to which the nonviolating party's expenses and fees could have been avoided or were self-imposed. *INVST,* 815 F.2d at 404. A party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims. *Id.* If a litigant fails to do so, the district court may exercise its discretion and either reduce the award accordingly, or in some instances, decline to award any expenses. *See Brown,* 830 F.2d at 1439 (Court should consider whether the party seeking fees caused the litigation to be longer than necessary, because a duty of mitigation exists for that party.).[19]

■ Similarly, an attorney may not remain idle after a "motion, pleading, or other paper" filed in violation of Rule 11 by his opponent has come to his attention. The advisory committee notes stress that "[a] party seeking sanctions should give notice to the court and the offending party *promptly* upon discovering a basis for doing so." Fed.R.Civ.P. 11 advisory committee notes (emphasis added). In the same manner that a failure to mitigate expenses may result in a corresponding reduction in the amount of attorney's fees and costs awarded, so also may a failure to provide prompt notice of an alleged violation to the court *and* the offending party reduce the ultimate award. *Donaldson,* 819 F.2d at 1560. Prompt notice of Rule 11 violations conserves judicial time and energy, as well as monetary resources, while at the same time deterring future violations. At least one district court has characterized a party's duty to mitigate damages and provide notice as one encompassing a duty to use the least expensive method to resolve the dispute, stating

> [t]hus, while an informal means may not always work to dispose of frivolous lawsuits quickly, the parties have a duty to

---

19. On the issue of mitigation, Judge Schwarzer, in his widely read article on Rule 11, states:

> Permitting or encouraging the opposing party to litigate a baseless action or defense past the point at which it could have been disposed of tends to perpetuate the waste and delay which the rule is intended to eliminate. It also undermines the mitigation principle which should apply in the imposition of sanctions, limiting recovery to those expenses and fees that were reasonably necessary to resist the offending paper.
>
> ․ ․ ․ ․ ․
>
> In assessing the damage done, the court should consider the extent to which it is self-inflicted due to the failure to mitigate. If a baseless claim could have been readily disposed of by summary procedures, there is little justification for a claim for attorney's fees and expenses engendered in lengthy and elaborate proceedings in opposition. The rule's purpose would be frustrated if it encouraged the offended party to play the very game at which it is aimed.

*Schwarzer,* 104 F.R.D. at 198–200 (footnotes omitted).

try to resolve the frivolous claims using the least expensive alternative. The duty arises because the parties have the means available to them, both informal and formal, to gain early access to the judge presiding over their case. Because they have the means to keep the costs of litigation to a minimum, the parties should alert the court to problems that are possible to resolve early in the litigation, without the necessity for expensive, formal motions.

The duty is one of mitigation; it rests on the concept that the victim of a frivolous lawsuit must use reasonable means to terminate the litigation and to prevent the costs of that frivolous suit from becoming excessive. If a party eventually wins rule 11 sanctions, but has failed to use the least expensive route to early resolution, the court may rule that not all the expenses the successful party incurred in making formal motions were reasonable attorney's fees that should be awarded under rule 11.

*United Food*, 106 F.R.D. at 350.[20]

 In mandating prompt notice, we do not mean to impose upon litigants a duty of

notification that requires written notice or notice through the formality of pleadings; nor do we specify a particular time frame in which notice must be given by counsel. Notice may be in the form of a personal conversation, an informal telephone call, a letter, or a timely Rule 11 motion. We do caution, however, that "to avoid misunderstanding and permit appellate review, the notice given, or evidence of the giving of notice, should be made a part of the record." *Donaldson*, 819 F.2d at 1560. In this regard, prudence dictates that notice should be reduced to writing and given to both the court and the offending party.[21]

Our Circuit has previously recognized the importance of prompt action by litigants in Rule 11 cases. In *Trevino v. Holly Sugar Corp.*, 811 F.2d 896 (5th Cir. 1987), this Court affirmed the district court's denial of Rule 11 sanctions against the plaintiff when the defendant, in July 1985, had challenged all of the plaintiff's claims as frivolous from the inception of the suit in April 1983. *Id.* at 908. The district court declined to impose sanctions, holding that the Rule 11 request for sanc-

---

**20.** Specifically, the *United Food* court pointed to the fact that the defendant, after the filing of the original complaint, could have called a telephone conference with the court and the plaintiffs at which the defendant could have brought to the court's attention the factual baselessness of the plaintiff's claim. The court also suggested that the defendant should have called a status conference pursuant to local rules where the court could have pursued means of resolving the lawsuit short of the formal, expensive summary judgment proceedings that were ultimately initiated by the defendant. *United Food*, 106 F.R.D. at 349.

While we, like the district court in *United Food*, strongly encourage litigants to use the least expensive alternative to alert the court and the offending party of a Rule 11 violation, we stress that what constitutes the appropriate alternative will vary depending on the nature of the case and the severity of the violation. In *United Food*, the court's decision was premised to a large extent on the obvious and egregious nature of the Rule 11 violation in the original complaint. The same considerations which influenced the court's decision in *United Food* may not apply when the violation occurs in a subtle manner. Moreover, a party's plan of action in a Rule 11 situation necessarily depends upon the extent to which the local rules

permit and the court is receptive to informal resolution of such disputes.

**21.** Surely Rule 11 contemplates litigants viewing the duty to mitigate, not as a burden, but as a mechanism to deter future abuses by opponents in the same litigation and to promote the efficient disposition of the court's docket. By promptly notifying a party that he has violated Rule 11 and that sanctions will be sought, a party may obtain the voluntary dismissal or withdrawal of his opponent's claim or defense, or trigger appropriate settlement negotiations. Moreover, by putting an offending party on notice of defects in his paper, a litigant strengthens his case for sanctions should that party persist in a frivolous or baseless position. *See Brownlow v. General Servs. Employees Union,* 35 Empl.Prac.Dec. (CCH) ¶ 34,886, at 35,896 (N.D.Ill.1984) [Available on WESTLAW, 1984 WL 1147]. "Under the duty to mitigate ... informal methods of dealing with frivolous complaints—common enough already among practicing attorneys—should be encouraged. When such efforts fail and the court ultimately finds dismissal to be warranted, the fact that the party seeking sanctions sought to resolve the dispute informally should bolster the claim for attorney's fees under rule 11." *Nelken,* 74 Geo. L.J. at 1336.

tions based on the filing of the plaintiff's motions was not timely. In affirming the district court's ruling, this Court implicitly condemned using Rule 11 to challenge generally all papers filed in a lawsuit at the termination of a proceeding. *See also Stevens,* 789 F.2d at 1061 (District court did not abuse its discretion in denying sanctions motion filed in untimely manner and when purpose of belated request was more retaliatory than substantive in nature.). Parties should not be allowed to "run up" exorbitant fees and expenses when responding to papers filed in violation of Rule 11; nor should litigants or courts remain idle in the face of possible violations. To allow such behavior would effectively transform Rule 11 from a shield to a sword, whereby guileful practitioners could profit from the misfortunes and mistakes of fellow professionals.

Our discussion presupposes that when a court's *primary* purpose in imposing sanctions is to deter, not to compensate, a determination of the "reasonableness" of fees and expenses does not necessarily depend on the steps taken to mitigate those expenses by the Rule 11 movant. Rather, the relevant considerations become the conduct and resources of the party to be sanctioned. *See Nelken,* 74 Geo.L.J. at 1336. However, it is precept that sanctions must be imposed within a time frame that has a nexus to the behavior sought to be deterred. This nexus becomes particularly important when a court imposes sanctions against a litigant on its own initiative. Sanctions assessed by courts should not amount to an "accumulation of all perceived misconduct, from filing through trial," resulting in a "single post-judgment retribution in the form of a massive sanctions award." *In re Yagman,* 796 F.2d 1165, 1183 (9th Cir.1986), *cert. denied,* — U.S. ——, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987).

The most obvious defect in this procedure is that it flies in the face of the primary purpose of sanctions, which is to deter subsequent abuses. This policy is not well served by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end. A proper sanction assessed at the time of a transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions. Such "prompt action helps enhance the credibility of the rule and, by deterring further abuse, achieve its therapeutic purpose."

*Id.* (citations omitted).

■ We recognize that the drafters of Rule 11 contemplated that, in the case of pleadings, the sanctions issue normally will be determined at the end of the litigation. Fed.R.Civ.P. 11 advisory committee notes. Thus, by our opinion today, we do not mean to imply that withholding a sanctions decision until the end of trial is in all instances inappropriate. "The particular format to be followed should depend on the circumstances of the situation and the severity of the sanction under consideration." *Id.* For instance, a determination of whether or not a pleading is well grounded in law and fact may not be feasible until after an evidentiary hearing on a motion for summary judgment or even after the parties have presented their case at trial. Indeed, even if the information available to one side may seem to indicate that the other's position is not well founded, the former is nonetheless ordinarily entitled to assume, unless and until the contrary is unmistakably apparent, that his opponent is acting reasonably and in good faith; and, of course, the trial court may likewise so assume. Additionally, a judge is not obliged to raise the sanctions issue initially before applying sanctions *sua sponte.* Nevertheless, where a complaint or other paper is obviously defective within the context of Rule 11, we join with the Ninth Circuit in concluding that a court should at a minimum notify the individual certifying the document that Rule 11 sanctions will be assessed at the end of trial if appropriate. *In re Yagman,* 796 F.2d at 1184. Such early notice will warn a certifying individual that he may be exposed to substantial sanctions should he persist in his offensive conduct, as well as prevent unsuspecting parties from suffering a large punitive award at the end of the proceedings.

### F. Conclusions of Law and Findings of Fact

Before turning to the facts of the instant case, there is one final issue to be addressed: that is, whether Rule 11 decisions must in all cases be supported by specific findings of fact and conclusions of law by the district court. Rule 11 itself makes no mention of this concern and there is, understandably, no helpful legislative history.

At least one circuit has already expressly rejected our panel's language requiring evidentiary findings and explanations every time a party seeks sanctions under Rule 11. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir.1987) (en banc), *petition for cert. filed*, (Nov. 20, 1987). However, the *Szabo* court stopped short of adopting a rule that would excuse specific explanations for Rule 11 decisions in all cases. Focusing on the severity of the sanctions imposed in a particular case, the Seventh Circuit stated,

> We do not now join the Fifth Circuit in requiring judges to make findings and give explanations every time a party seeks sanctions under Rule 11. Sometimes the reason for the decision is obvious. When the motion for sanctions is foolish, or when the reasons for denying a colorable motion are apparent on the record, the judge need not belabor the obvious. But when the motion is serious, a judge ought to treat with it seriously.... A serious Rule 11 motion is not a gnat to be brushed off with the back of the hand.

*Id.* at 1084 (citation omitted). The *Szabo* court went on to conclude that the Rule 11 movant in that case was entitled to some explanation for the district court's abrupt dismissal of his claim for sanctions and remanded for a more precise determination of the sanctions issue.

In a subsequent case, the Seventh Circuit more precisely delineated the responsibility of district courts in Rule 11 cases, requesting that, in cases involving substantial awards, district judges state with some specificity the reasons for the imposition of a sanction, and the manner in which the sanction is computed. *Brown*, 830 F.2d at 1438. The *Brown* court recognized that what constitutes a "substantial" award is incapable of precise definition, but will usually involve a large sum of money or be large in relation to the offending conduct. Additionally, the court required that sanctions must be "quantifiable with some precision," sufficiently incorporating the district court's findings and conclusions so as to permit effective appellate review of the justification for the award. *Id.*

■ In a similar vein, the Tenth Circuit has mandated findings in Rule 11 cases when the prepayment of a sanctions award has the effect of a preclusion of access to the courts. *Cotner*, 795 F.2d at 903.[22] By doing so, the Tenth Circuit focused, not on the amount of the sanctions award, but instead on the preclusive effect of that award on the violating party's access to the courts.[23] *See also Oliveri*, 803 F.2d at

---

22. In *Cotner*, the district court fined the plaintiff, an inmate at Oklahoma State Penitentiary, $1000 for engaging in successive and vexatious litigation, violating a previous court order, and violating Fed.R.Civ.P. 11. Furthermore, the district court barred the plaintiff from filing further actions until the fine was paid in full and placed restrictions on the commencement of future litigation by the plaintiff. *Cotner*, 795 F.2d at 902. In concluding that the district court had abused its discretion by imposing such a fine without affording the plaintiff appropriate procedural protections, the Tenth Circuit referred back to its previous opinion in *Carter v. United States*, 733 F.2d 735 (10th Cir. 1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 915, 83 L.Ed.2d 928 (1985), wherein the court had held that sanctions cannot result in total preclusion of access to the courts. Consistent with the

*Carter* holding, the *Cotner* court stated with respect to sanctions, whose prepayment may have the effect of restricting future filings, that "[f]indings must be made to determine whether a litigant is able to make such payment so as to avoid an absolute preclusive effect on access to courts." *Cotner*, 795 F.2d at 903.

23. We likewise believe that the imposition of sanctions must not result in total, or even significant, preclusion of access to the courts. We note that this Court has previously held that orders awarding Rule 11 sanctions prior to the entry of a dispositive order terminating the litigation are not final appealable orders for purposes of 28 U.S.C. § 1291. *Click v. Abilene Nat'l Bank*, 822 F.2d 544, 545 (5th Cir.1987). However, if a district court imposes monetary sanctions that are made payable prior to the entry of

1281 (Where district court generally imposed sanctions without differentiating among defendants and particular claims, the court stated, "Because of their leveraged impact in the litigation process, however, sanctions against attorneys should not be given such a broad-brush approach."); *Lieb,* 788 F.2d at 158 (Court ordered a remand where the record provided no basis for the appellate court to review the exercise of discretion by the trial judge in denying counsel's motion for attorney's fees pursuant to Rule 11.).

█ Mindful of the concerns of our brethren on other circuits, we adopt a rule today that does not require specific findings and conclusions by a district court in all Rule 11 cases. However, the rule we adopt does emphasize the importance of an adequate record for appellate review in those cases in which the violation is not apparent on the record and the basis and justification for the trial judge's Rule 11 decision is not readily discernible. As Judge Schwarzer notes

> [f]indings and conclusions, even if only brief, serve at least three useful purposes: (1) they assist in appellate review, demonstrating that the trial court exercised its discretion in reasoned and principled fashion; (2) they help assure the litigants, and incidentally the judge as well, that the decision was the product of thoughtful deliberation, and (3) their publication enhances the deterrent effect of the ruling.

*Schwarzer,* 104 F.R.D. at 199. Like a sliding scale, the degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award.

█ If the sanctions imposed are substantial in amount, type, or effect, appellate review of such awards will be inherently more rigorous; such sanctions must be quantifiable with some precision. Therefore, justification for the Rule 11 decision in the record must correspond to the amount, type, and effect of the sanction applied. Likewise, if a district court denies, rather than imposes, sanctions without justification in the record, the appellate court will undertake an analysis similar to that mentioned above regarding the award of sanctions. Thus, the sword of inadequate record preparation cuts both ways—against a successful Rule 11 movant who has obtained a significant award as well as against a litigant who successfully defeats a Rule 11 motion.[24]

We therefore reject a rule that would impose upon district courts the onerous and often time-consuming burden of making specific findings and conclusions in all Rule 11 cases. In doing so, it should be clearly understood that when the basis and justification for a Rule 11 decision is not readily discernible on the record, an adequate explanation by the trial court for the decision will be necessary. In its absence, a prompt remand for such findings will be made.

### G. *Capital's Rule 11 Motion*

█ We now turn to the district court's determination that Rule 11 sanctions were not appropriate in the instant case. As previously mentioned, this Court will not overturn a district court's ruling on a re-

---

a final appealable order, a litigant may suffer a substantial restriction on his access to the courts. Financially strapped because of the sanctions award, a litigant is unable to proceed with his case on the merits. To avoid this harsh, inequitable scenario, we conclude that if a litigant contends that a monetary sanction award precludes access to the court, the district judge must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) make express written findings, after a prompt hearing, as to why the award does not have such a preclusive effect. Such a

rule would be consistent with our holding in *Click* and our determination today that any type of sanction, monetary or otherwise, should not result in preclusion of access to the courts.

**24.** The trial court's articulated explanation on the record of its Rule 11 decision should be sought at the earliest moment after sanctions are imposed or denied. If a Rule 11 decision is not rendered in open court, a request should be made for record findings and conclusions from the court as soon as practicable after the decision.

quest for Rule 11 sanctions in the absence of an abuse of discretion. However, even applying this deferential standard, we are constrained to vacate the district court's order denying sanctions under Rule 11 and remand for the reasons cited below.

█ It is well established that Rule 11 imposes upon attorneys the affirmative obligation of reasonable inquiry into the facts and law of their case. In its order denying Capital's motion for attorney's fees as Rule 11 sanctions, the district court stated that while it was not "totally convinced that a reasonable prefiling inquiry as to the specific facts and the law was made by the attorneys for Plaintiffs in the instant case," it nevertheless was reluctant to grant Capital's motion because of the unsettled state of existing law prior to the time the plaintiffs' complaint was filed. After reviewing the district court's order denying Capital's motion, we agree with the panel that the district court may have found a Rule 11 violation, but chose to excuse the offending conduct and not to impose sanctions. As we noted earlier, Rule 11, by its express language, mandates the imposition of sanctions once a violation of the rule is discovered. We agree with the panel's statement that "under our current practice there are no 'free passes.'" *Thomas,* 812 F.2d at 989. District courts may not selectively impose sanctions when a violation of Rule 11 is established. Therefore, in view of the fact that a Rule 11 violation may have been perpetrated by the plaintiffs without the subsequent imposition of sanctions by the district court, we are unable to say that the district court did not abuse its discretion in denying Capital's Rule 11 motion.

Furthermore, it is important to note that, in its motion for attorney's fees, Capital asserted that the plaintiffs failed to make a reasonable inquiry into either the facts or law before filing their complaint and that the action was brought and litigated in bad faith. Specifically, Capital pointed to the expansion of the plaintiffs' judicial complaint beyond the EEOC complaint and the assertion of a class action by the plaintiffs that was never certified. In this respect we note that, as we today hold, Rule 11 does not impose a continuing obligation on attorneys, but only a standard of good faith and reasonable investigation as of the date legal documents are signed.

If, on remand, the district court should decide that Rule 11 was violated, and that the appropriate sanction is the rigorous one of an award of attorney's fees, the district court must weigh in its Rule 11 analysis Capital's duty to mitigate its expenses (1) by correlating its response, in hours and funds expended, to the merits of the plaintiffs' claim and (2) by timely notifying court and the plaintiffs-employees of the alleged Rule 11 violations. In this vein, we note that Capital did not request Rule 11 sanctions until after the case was on appeal to this Court, despite the fact that the alleged violations of Rule 11 had occurred during the initial stages of the litigation.[25]

## III. CONCLUSION

Our opinion today strives to further the rulemakers' goal of deterring abuse in the litigation process by providing guidance concerning the procedures and standards utilized in the imposition of Rule 11 sanctions. We trust that our opinion, like the rule itself, will instill among members of the bar a sense of responsibility to prevent public perception of the legal profession as

---

**25.** The panel also affirmed the district court's denial of Capital's request for attorney's fees under 28 U.S.C. § 1927 and 42 U.S.C. § 2000e–5(k). *Thomas,* 812 F.2d at 990. Recognizing that the standard of review for denial of attorney's fees under both statutory provisions is abuse of discretion, the panel correctly concluded that the district court did not abuse its discretion in denying Capital's request for attorney's fees under either provision and, discerning no error, we adopt the panel opinion in this regard. Additionally, we adopt that portion of the panel opinion declining to address Capital's claim under 42 U.S.C. § 1988, as the district court did not discuss that statutory basis for attorney's fees. *Id.* at 990 n. 3. On appeal, the plaintiffs also assert that Rule 11 violates the Rules Enabling Act, 28 U.S.C. § 2072. However, having failed to raise the argument in the trial court, plaintiffs may not do so on appeal. As an appellate court, we decline to entertain issues not raised in, or decided by district courts. *Alberti v. Klevenhagen,* 790 F.2d 1220, 1229 (5th Cir.1986).

one tolerant of abuse in its midst. Rule 11 is a powerful tool for judges in their roles as judicial overseers and attorneys in their battles against fellow practitioners who do not comply with their obligations under the rule. Invoked properly, Rule 11 can confer great benefits on all concerned. If abused, Rule 11 may chill attorneys' enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories. As a result, all will suffer.

For the reasons stated above, we vacate the district court's order denying Rule 11 sanctions and remand for further proceedings not inconsistent with this opinion. Further, we affirm the district court's order denying attorney's fees under 28 U.S.C. § 1927 and 42 U.S.C. § 2000e–5(k).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.