**DALLAS GAY ALLIANCE, INC., et al., Plaintiffs,**

v.

**DALLAS COUNTY HOSPITAL DISTRICT, d/b/a Parkland Memorial Hospital et al., Defendants.**

Civ. A. No. 3–88–1394–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 4, 1989.

On Motion for Attorneys' Fees and Expenses Aug. 11, 1989.

M. William Nelson, Donald J. Maison, Jr., Dallas, Tex., Judith Levin, New York City, for plaintiffs.

R. Jack Ayres, Jr., Thomas V. Murto, III, Thomas L. Cox, Jr., Director of Legal Affairs, Dallas County Hosp. Dist., John Vance, Dist. Atty., Henry J. Voegtle, Asst. Dist. Atty., Jim E. Cowles, Greg Marks & John Scully, Cowles & Thompson, Dallas, Tex., Kevin O'Hanlon, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court are Plaintiffs' Motion for Class Certification, filed August 30, 1988, and Defendants' Responses thereto, filed September 27 and September 30, 1988, on which the Court held a hearing April 11–12, 1989. For the reasons here stated the Court is of the opinion that the Motion should be denied and that Plaintiffs' suit should be dismissed.

This suit for declaratory and injunctive relief was originally filed May 19, 1988, in the 14th Judicial District Court of Dallas County, Texas, by Plaintiffs Dallas Gay Alliance, Inc. ("DGA"), Ronald Dickson Woodroof, Benjamin James Wakefield, James Doe, Irvin Riddle, Bill R. Seals, and DGA as Next Friend for Seven John Does, against Defendant Dallas County Hospital District d/b/a Parkland Memorial Hospital ("Parkland"). On May 20, 1988, the 14th Judicial District Court issued an "Order of Temporary Injunction" requiring Defendant to take several actions with regard to patients with Acquired Immune Deficiency Syndrome ("AIDS") or AIDS–Related Complex ("ARC"). The injunction proceedings were not recorded. See Defendants' May 26, 1988 Motion in the 14th District Court.

On June 17, 1988 the case was removed to this Court. On June 21, 1988 this Court held a conference with counsel, dissolved the 14th District Court injunction order (considering it to be a temporary restraining order), and directed Plaintiffs to file their (requested) motion for leave to amend.

On July 15, 1988 with leave of Court, Plaintiffs filed their First Amended Complaint—Class Action, dropping DGA, Inc. as Next Friend for Seven John Does and adding as Defendants Ron J. Anderson, M.D., President and Chief Operating Officer of Parkland, University of Texas Southwestern Medical Center at Dallas ("Southwestern"), and Daniel W. Foster, M.D., Chairman of the Department of Internal Medicine at Southwestern. Southwestern provides medical staffing to Parkland; Fos-

ter's responsibilities include assignment of staff to the Parkland AIDS Clinic. See First Amended Complaint. On August 1, 1988, Anderson was dismissed pursuant to a stipulation. On September 28, 1988 the Court, without objection, dismissed Plaintiffs' Texas constitutional and statutory claims against Southwestern.

Since the suit began Plaintiffs Wakefield and Riddle have died. February 17, 1989 Pretrial Order at 2. Woodroof, Doe, and Seals seek designation as class representatives. August 30, 1988 Motion for Class Certification. Doe is James Swinney who testified at the April 11–12 hearing and who is identified as Swinney in this Opinion. Woodroof did not appear at the hearing due to illness. DGA, per the representations of Plaintiffs' counsel at pretrial conferences February 28, 1989 and April 10, 1989, sought to continue as a co-plaintiff but did not seek to be a class representative. See also August 30, 1988 Brief in Support of Class Certification Motion at 9–10.

(For purposes of this Opinion the Plaintiffs or named-Plaintiffs referred to are Seals and Swinney (previously Doe), since Woodroof did not appear in person or by deposition. The Court considers that Woodroof's claims, see First Amended Complaint at 7, 8, 12 and 15, are subject to the same defenses of lack of standing and mootness as apply to the claims of Seals and Swinney. See infra at 1391, n. 16.)

Plaintiffs apparently seek class certification pursuant to Fed.R.Civ.P. 23(b)(1) and (b)(3). See Pretrial Order at 3. Defendants oppose class certification, asserting that Plaintiffs lack standing and that Plaintiffs' claims are moot, see Pretrial Order at 3, and that Plaintiffs do not meet the requirements of Fed.R.Civ.P. 23. Pretrial Order at 4.

Plaintiffs seek certification of the following class:

All past, present, and future indigent persons residing in the Dallas County Hospital District who are infected with the Human Immunodeficiency Virus ("HIV") and/or who have been diagnosed with Acquired Immune Deficiency

Syndrome ("AIDS") and/or who have been diagnosed with AIDS–Related Complex ("ARC"), and who have sought, presently are seeking, or might in the future seek medical care at Parkland Memorial Hospital.

Plaintiffs allege that Defendants provide inadequate, inferior, and discriminatory treatment to AIDS and ARC patients at Parkland. Pretrial Order at 2–3. Plaintiffs seek declaratory and injunctive relief based on claims that Defendants' actions violate the United States Constitution, federal statutes, the Texas Constitution and Texas statutes.[1] Specifically, Plaintiffs allege the following about the care provided:

(1) Parkland AIDS Clinic denies access to, and has a waiting list for, AZT[2]

(2) Parkland AIDS Clinic does not provide aerosolized pentamidine,[3]

(3) Parkland has bed controls limiting the number of beds for HIV-infected patients, and

(4) The staffing at Parkland AIDS Clinic is inadequate and provided in a discriminatory manner.

August 30, 1988 Brief at 8; Pretrial Order at 8.

### Analysis

■ Defendants' standing and mootness defenses present a threshold challenge which the Court must address before determining the propriety of class certification. *See* 1 H. Newberg, *Newberg on Class Actions* §§ 2.05–.07 (2nd ed. 1985) [hereinafter *Newberg* ] (threshold standing distinct

from capacity to represent a class). Article III of the Constitution limits federal court jurisdiction to "Cases" and "Controversies". U.S. CONST. art. III, § 2, cl. 1; *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). The case-or-controversy requirement serves to limit the business of federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Geraghty*, 445 U.S. at 396, 100 S.Ct. at 1208–09 (quoting *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968)).

■ The case-or-controversy limitation of Article III requires that a party invoking federal court jurisdiction have standing— that is, a personal stake in the outcome. *See, e.g., Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In order to satisfy this requirement, a plaintiff must demonstrate that he has suffered an injury in fact that has been caused by the challenged conduct and that can be redressed by the remedy sought. *See, e.g., Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). The standing question focuses on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975)).[4]

---

1. Specifically, Plaintiffs allege violations of: (1) section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (2) the statutes and regulations pertaining to Medicaid, 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. § 440.230(b)-(c); (3) the community service obligation of the Hill–Burton Act and its regulations, 42 U.S.C. § 291c(e)(1), 42 U.S.C. § 300s–1(b)(1)(K)(i), 42 C.F.R. § 124.601, *et seq.;* (4) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (5) the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and (6) Defendants' duty to provide medical care, Tex.Rev.Civ.Stat.Ann. arts. 4436b, 4438a, 4438f (Vernon Supp.1988), and Art. IX, §§ 4, 9 of the Texas Constitution.

2. Azidothymidin ("AZT") is an FDA (Food and Drug Administration) approved drug for the treatment of HIV-infected, ARC and AIDS patients.

3. Aerosolized pentamidine is a non-FDA approved treatment of a FDA approved drug for persons infected with HIV or diagnosed with ARC or AIDS.

4. The requirement of "actual injury redressable by the Court" serves several judicial policies embodied in Article III. *See, e.g., Simon*, 426 U.S. at 38 n. 16, 96 S.Ct. at 1924 n. 16. A significant personal stake in the outcome serves to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of

■ At a minimum, Article III requires the party invoking federal jurisdiction to show that he has personally suffered some actual injury or is in immediate danger of sustaining some direct injury as a result of the allegedly illegal conduct of the defendant.[5] *See, e.g., O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). "Abstract injury is not enough." *Id.* The actual injury or threat of injury must be both "real and immediate", not "conjectural" or "hypothetical". *Id.* Further, if none of the named plaintiffs seeking to represent a class establishes the requisite case-or-controversy, none may seek relief on behalf of himself or any other member of the purported class. *Id.*

■ The standing requirement of "actual injury redressable by the court" also requires the Court to focus on the nature of the remedy sought. In this case, Plaintiffs are not seeking damages but rather declaratory[6] and injunctive relief. Injunctive relief is a stringent remedy. *Walls v. Mississippi State Dept. of Public Welfare,* 730 F.2d 306, 325 (5th Cir.1984). "Ordinarily, a court may not enjoin conduct that is neither threatened nor imminent." *Id.*

■ The Court recognizes, however, that the Court's power to grant injunctive relief may survive discontinuance of illegal conduct in order to prevent future wrongdoing. *Id.* (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953)); *see also United States v. Oregon State Medical Soc.,* 343 U.S. 326, 333, 72 S.Ct. 690, 695–96, 96 L.Ed. 978 (1952) (sole function of injunctive relief is to forestall future violations). "[T]he necessary determination is that there exists some cognizable danger of

recurrent violation, something more than the mere possibility." *Walls,* 730 F.2d at 325 (quoting *W.T. Grant,* 345 U.S. at 633, 73 S.Ct. at 898). The nature of the remedy sought in this case plays an important role in the Court's analysis of the standing and mootness issues.

■ The doctrines of standing and mootness derive from the case-or-controversy limitation in Article III. Standing requires that a plaintiff have a personal stake at the commencement of the litigation. *See, e.g., Geraghty,* 445 U.S. at 397, 100 S.Ct. at 1209. Mootness has been described as the doctrine of standing set in a time frame: the mootness doctrine requires plaintiffs to have a personal stake throughout the litigation's existence. *See id.* Mootness also provides a time-bound perspective on the standing injury requirement; mootness inquires whether injuries once sufficient to confer standing have passed. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3529 (2nd ed. 1984) [hereinafter *Wright & Miller*]; *see also* 1 *Newberg* at § 1088 n. 03 (1st ed. 1977) ("the standing determination—whether an actual controversy initially exists—and the mootness determination—whether an actual controversy continues to exist").

■ Mootness and standing principles were developed outside the class action context, but Article III limitations apply to class actions. *See* 1 *Newberg* at § 2.06. A putative class representative who alleges no individual injury may not seek relief on behalf of himself or any other member of a class. *Id.; see also O'Shea,* 414 U.S. at 494, 94 S.Ct. at 675. The named plaintiff's individual claims must be "live" both at the time the class action complaint is filed and

difficult ... questions." *Id.* (quoting *Baker v. Carr,* 369 U.S. at 204, 82 S.Ct. at 703). The standing requirement also serves to restrict the exercise of judicial power to litigants who will directly benefit from the consequences of judicial action. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472–473, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982). Further, the standing requirement tends to assure that legal questions presented to the court will be resolved, not in the atmosphere of a public debating forum, but in a concrete factual context. *Id.*

5. The Court recognizes, of course, the grave and tragic injuries caused by AIDS and ARC. However, the Court must focus on the actual and redressable injuries, if any, allegedly caused by Defendants.

6. Declaratory relief may only be granted in "a case of actual controversy." 28 U.S.C. § 2201 (Supp.1989).

at the time of class certification. *Geraghty*, 445 U.S. at 418 n. 12, 100 S.Ct. at 1220 n. 12 (Powell, J., dissenting); *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975); *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir.1987).[7]

Defendants contend that no case-or-controversy exists in this suit and therefore, this Court lacks jurisdiction. Defendants argue that Plaintiffs had no standing at the time the class action complaint was filed and that if Plaintiffs initially had standing, Plaintiffs' claims are now moot. Defendants presented their jurisdictional challenge to the Court prior to the class certification hearing and the Court requested briefs on the issue.

Pursuant to a request from the Court, Plaintiffs filed on March 7, 1989, a Statement of Specific, Continuing "Live" Issues. According to this Statement, the only "live" controversy remaining concerns the staffing of the AIDS Clinic at Parkland. Plaintiffs contend, however, that even though the other three allegations, *viz.*, limiting access to AZT, denial of aerosolized pentamidine and discriminatory AIDS bed control policies, are no longer "live" cases or controversies, these claims are *not* moot.

■ An action becomes moot only when the controversy no longer exists and "there is no reasonable expectation" that it will recur in the future. 1 *Newberg* at § 2.13 (citing *W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897–98). In limited circumstances, exceptions to the mootness doctrine provide for judicial resolution of cases or controversies that no longer exist. Plaintiffs urge the Court to recognize an exception to the mootness doctrine in this case.

■ One exception to the mootness doctrine allows for the situation in which the specific relief sought by the plaintiff comes about by the defendant's voluntary cessation of the challenged conduct. Even when the defendant's actions are accompanied by assurances of future good conduct, the controversy is not moot "unless the defendant

meets a heavy burden to show its change of heart is permanent and that the defendant will not return to its old ways." 1 *Newberg* at § 2.15. In such cases, the courts are suspicious that the defendant's dominant motivation is to deliberately moot the controversy and evade judicial review of its conduct. *Id.*

*W.T. Grant, supra,* the leading federal case on mootness by voluntary cessation, involved a Clayton Act challenge to an individual defendant's holding of interlocking directorates in corporations. 345 U.S. at 629, 73 S.Ct. at 894. Soon after the complaint was filed, the defendant resigned his directorate positions and filed affidavits disclaiming any intent to resume the positions, thereby rendering the action apparently moot. *Id.* at 630, 73 S.Ct. at 896. The Supreme Court affirmed the denial of injunctive relief and stated the test for mootness: The case may be moot "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' ... The burden is a heavy one." *Id.* at 633, 73 S.Ct. at 897. The Court acknowledged the trial court's discretion in this determination and noted the following items for the trial court's consideration: (1) "the bona fides of the expressed intent to comply," (2) "the effectiveness of the discontinuance," and (3) "in some cases, the character of the past violations." *Id.*

■ Plaintiffs also argue that this case falls within the narrow class of cases in which the challenged conduct is "capable of repetition, yet evading review." This exception to the mootness doctrine typically applies to transitory claims in which the mere passage of time threatens to insulate an alleged violation from judicial review. *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975) (temporary nature of pretrial detention); *Roe v. Wade*, 410 U.S. 113, 123–125, 93 S.Ct. 705, 711–13, 35 L.Ed.2d 147 (1973) (temporary nature of pregnancy). This exception also applies in cases where the named plaintiff no longer has a

7. The Court recognizes that under *Sosna* once a class is certified, the class action may continue

although the named plaintiffs' claims become moot.

personal stake in the outcome, but the claim may arise again with respect to that plaintiff. *Geraghty,* 445 U.S. at 398, 100 S.Ct. at 1209–10. Under the "capable of repetition, yet evading review" exception, the litigation may continue because the plaintiff faces some likelihood of becoming involved in the same controversy in the future and therefore, vigorous advocacy can be expected to continue. *Id.* at 398–399, 100 S.Ct. at 1209–10.

The standing requirement of Article III must be analyzed and applied issue by issue. *Geraghty,* 445 U.S. at 401, 100 S.Ct. at 1211. As previously discussed, each named Plaintiff must establish the requisite case-or-controversy in order to represent himself or any other members of the putative class.

With this legal analysis in mind, the Court will now consider each claim alleged.

### The AZT Waiting List

Plaintiffs, on behalf of themselves and the purported class, seek declaratory and injunctive relief forbidding Defendants from denying AZT to any medically eligible person. *See* First Amended Complaint at 7, 8, 12 and 13. As previously discussed, the named plaintiff's individual claims must be "live" both at the time the class action complaint is filed and at the time of class certification. Plaintiffs admit that the AZT waiting list no longer presents a "live" controversy, but nevertheless argue that the claim is *not* moot. *See* Plaintiffs' Statement, filed March 7, 1989. Before addressing the mootness argument, the Court must first determine whether the named Plaintiffs had standing at the commencement of this class action to assert a claim alleging the denial of AZT.

At the class certification hearing, Swinney (formerly Doe) testified that he was medically eligible to receive AZT in late January or early February of 1988; that he did not receive AZT immediately but was placed on Parkland's AZT waiting list; that he began receiving AZT from Parkland in late February 1988 and has continued to receive AZT from Parkland since that time.

Seals testified that he sought and was denied AZT from Parkland in the spring of 1988, and was placed on Parkland's AZT waiting list. Seals began receiving AZT from Parkland on or about March 31, 1988. *See* First Amended Complaint at 13. Parkland has continued to provide Seals with AZT since that date. Testimony of Seals.

Thus, as of July 15, 1988, the date the class action complaint was filed, the testimony and the pleadings establish that both named Plaintiffs were receiving AZT at Parkland's AIDS Clinic. In addition, the undisputed testimony establishes that Parkland had eliminated the AZT waiting list by July 15, 1988. Testimony of Seals and Dr. Nightingale. The standing doctrine requires the named plaintiff in a class action to present a "live" case-or-controversy at the time the class action complaint is filed.[8] *See supra* at 1384.

With regard to AZT, then, the Court finds that at the time the class action complaint was filed, no named Plaintiff was suffering an actual injury that could be remedied by an injunction requiring the Defendants to eliminate the AZT waiting list. The Court also finds that no named Plaintiff demonstrated a threatened injury sufficient to confer standing at the time the class action complaint was filed.[9] The

---

**8.** Plaintiffs request the Court to apply the relation back doctrine to consider Plaintiffs' allegations as of the date of the Original Complaint rather than the date of the First Amended Complaint. Plaintiffs filed their Original Complaint in state court May 19, 1988, at which time both named Plaintiffs were receiving AZT from Parkland. Consequently, the relation back doctrine does not alter the Court's analysis of the AZT claim.

**9.** The named Plaintiffs did not establish that they were in immediate danger of sustaining

direct injury as a result of the Defendants' alleged illegal conduct. Plaintiffs did not present any evidence that at the time the class action complaint was filed, Defendants threatened reinstatement of the AZT waiting list or that Defendants threatened denial of AZT to the named Plaintiffs. Plaintiffs' hypothetical or conjectural belief of threatened injury is insufficient to invoke the Court's jurisdiction. *See, e.g., Preiser v. Newkirk,* 422 U.S. 395, 403, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975) (speculative contingencies do not afford basis for passing on substantive issues).

Court therefore concludes that the named Plaintiffs failed to establish individual standing with respect to the AZT claim and so may not pursue this claim on behalf of themselves or others.

■ Assuming *arguendo* that the named Plaintiffs had standing at the commencement of the class action complaint to seek injunctive relief for the denial of AZT, the Court alternatively concludes that this claim is now moot. The Court has applied the principles enunciated in *W.T. Grant,* 345 U.S. 629, 73 S.Ct. 894, in analyzing the mootness issue. *See supra* at 1385.

The Court finds that Defendants have the bona fide and expressed intent to continue providing AZT to all qualified patients at Parkland's AIDS Clinic.[10] Dr. Anderson, President and Chief Operating Officer of Parkland, testified that budgetary constraints and lack of staffing to properly administer AZT initially limited the availability of AZT and prompted the establishment of the waiting list; that from July 1988 to the present time the availability of AZT at Parkland has not been limited; that Parkland does not tolerate discrimination against AIDS patients and that employees can be terminated for such behavior. Plaintiffs chose not to cross examine Dr. Anderson; his testimony is essentially uncontradicted and unchallenged.

Dr. Nightingale, the current director of Parkland AIDS Clinic, testified that he has no problems providing AZT at the Clinic and that no restrictions have been placed on the Clinic's distribution of AZT; that he could not guarantee infinite resources to support the provision of AZT because of uncertainties in the medical field; that the Parkland AIDS Clinic does not plan to reinstitute the waiting list or to limit the availability of AZT. It is not controverted that the AZT waiting list has been eliminated. The Court finds that there is no credible threat that the provision of AZT will be discontinued or that the AZT waiting list will be reinstituted.

The Court finds, from the testimony of Anderson and Nightingale, that the criteria for mootness have been met, *see W.T. Grant,* 345 U.S. at 633, 73 S.Ct. at 897–98, and " 'there is no reasonable expectation that the wrong will be repeated' ". *Id.*

In sum then, the AZT issue is moot.[11] *See, e.g., Armstrong v. Ward,* 529 F.2d 1132 (2nd Cir.1976) (Court found changed circumstances covered entire class and mooted all claims).

The Court finds that the named Plaintiffs did not have standing to assert the AZT claim at the time the class action complaint was filed. Alternatively, even assuming that the named Plaintiffs initially had standing, the AZT claim is now moot. Accordingly, the Court DISMISSES the named Plaintiffs' and thus the purported class's claims alleging the denial of AZT. *See, e.g., O'Shea,* 414 U.S. at 494 n. 3, 94 S.Ct. at 675 n. 3; *Tucker v. Phyfer,* 819 F.2d 1030, 1033 (11th Cir.1987); *see also* 1 *Newberg* at § 2.09 (lack of standing as cause for dismissal, not class denial).

### *Aerosolized Pentamidine*

Plaintiff Seals and Swinney, on behalf of themselves and members of the purported

---

**10.** Plaintiff Seals testified that a Parkland representative promised to eliminate the AZT waiting list in April 1988 but that that promise was not met. The Court finds that Dr. Anderson satisfactorily explained the reason for this delay in eliminating the waiting list—budget problems and lack of staffing which existed at that time but which were remedied before Plaintiffs filed their Class Action Complaint July 15, 1988.

**11.** Plaintiffs also assert that the AZT allegation presents a claim that is "capable of repetition, yet evading review." As already discussed in connection with the lack of injury, Plaintiffs have not demonstrated a likelihood of the AZT controversy recurring. The Court has also de-

termined that Defendants have established no reasonable likelihood of recurrence under *W.T. Grant* and Plaintiffs have not presented evidence to the contrary. *See McCrary v. Poythress,* 638 F.2d 1308, 1310 n. 2 (5th Cir.1981), *cert. denied,* 454 U.S. 865, 102 S.Ct. 325, 70 L.Ed.2d 165 (1981) (conclusory assertions that actions are capable of repetition insufficient). The Court also finds that the alleged AZT controversy is not a transitory claim in which the mere passage of time threatens to insulate it from judicial review. Consequently, the Court concludes that the "capable of repetition, yet evading review" exception to the mootness doctrine does not apply to the AZT claim.

class, seek declaratory and injunctive relief forbidding Defendants from depriving any eligible person of aerosolized pentamidine. *See* First Amended Complaint at 8, 9 and 16 (no allegations by Seals). Plaintiffs admit that the aerosolized pentamidine issue also no longer presents a "live" controversy, but nevertheless argue that the claim is *not* moot. *See* Plaintiffs' Statement, filed March 7, 1989. As with the AZT claim, the Court will address both the standing and mootness arguments.

Plaintiff Swinney testified that he does not receive aerosolized pentamidine from Parkland, because he receives aerosolized pentamidine from the AIDS Resource Center. Plaintiff Swinney testified that he prefers getting aerosolized pentamidine at the Center because the Center administers the treatment twice a month, whereas Parkland only provides treatment once a month. Swinney's only grievance with Parkland's provision of aerosolized pentamidine is that he is unable to receive the treatment on his own terms. Testimony of Swinney.

Dr. Barbaro, summoned by Plaintiffs, testified that there is no medical evidence that administering aerosolized pentamidine twice a month is more effective than once a month. The Court finds that Swinney's complaint with respect to Parkland's provision of aerosolized pentamidine represents merely a preference for frequency of treatment, and that there is no evidence that Swinney's complaint constitutes an injury. Further, Plaintiffs' counsel stated in closing remarks that Swinney's individual request for treatment twice a month should not be addressed by the Court. Finding Swinney has suffered no injury in fact, the Court concludes that Swinney lacks standing to assert a claim alleging the denial of aerosolized pentamidine.

With respect to Plaintiff Seals, the Court notes that Plaintiff Seals has not alleged an aerosolized pentamidine claim on behalf of himself or as a named class representative on this issue. *See* Plaintiffs' First Amended Complaint. On the basis of the pleadings alone, Plaintiff Seals does not have standing to assert a claim for the denial of aerosolized pentamidine because Seals has not alleged an injury caused by the Defendants' conduct. Alternatively, even assuming that both Plaintiffs Seals and Swinney have standing to assert the aerosolized pentamidine claim, the Court finds that the issue is moot.

Plaintiff Seals testified that before May 1988, Dr. Barbaro told him aerosolized pentamidine would be good for him, but that the treatment was not available at Parkland; that he (Seals) began receiving aerosolized pentamidine from Parkland in late July 1988 and has received the treatment from Parkland ever since.

Dr. Anderson testified that there are no present difficulties or controversies about providing aerosolized pentamidine at Parkland. Dr. Anderson stated that prior limits on dispensing aerosolized pentamidine were due to the Institutional Review Board's ("IRB")[12] ruling that aerosolized pentamidine, as a non-FDA approved use of an FDA approved drug, could only be used on a protocol (monitored research) and not on a prescription basis. Dr. Nightingale testified that he received IRB approval for aerosolized pentamidine in June 1988 so that doctors could thereafter prescribe the treatment for medical reasons.

Plaintiffs do not dispute that Defendants complied with the state court's temporary restraining order. Plaintiffs also do not dispute that even after this Court dissolved that order, Defendants have continued to provide aerosolized pentamidine to qualified patients. Defendants have not expressed any intention to discontinue the treatment in the future and Plaintiffs have not presented any evidence to the contrary. The Court finds that Defendants are acting in good faith and accepts their explanation why dispensing aerosolized pentamidine was delayed.

---

12. The IRB is an independent body required by federal law and appointed by both Parkland and Southwestern. The purpose of the IRB is to ensure, among other things, safe and ethical treatments of patients. *See* testimony of Dr. Anderson.

The Court, therefore, concludes that under the principles of *W.T. Grant* and its progeny, Defendants have established the mootness of the aerosolized pentamidine claim.[13]

With respect to the aerosolized pentamidine claim, then, the named Plaintiffs lack standing and, in any event, the claim is moot. The Court therefore DISMISSES the named Plaintiffs' and the purported class's claims alleging the denial of aerosolized pentamidine.

### Bed Controls

■ Plaintiffs Seals and Swinney, on behalf of themselves and the purported class, seek declaratory and injunctive relief forbidding Defendants from discriminating against persons infected with HIV and/or diagnosed with ARC or AIDS in bed placement practices at Parkland. *See* First Amended Complaint at 9, 10 and 18 (no allegations by Seals). Plaintiffs admit that the bed control issue no longer presents a live controversy, but nevertheless argue that the claim is not moot. *See* Plaintiffs' Statement, filed March 7, 1989.

In closing argument, Plaintiffs' counsel stated that Defendants have an unwritten policy of limiting the number of beds available to HIV-infected patients at Parkland. No such evidence was adduced and, of course, counsel's statements are not evidence. Dr. Barbaro testified that he had had some difficulties with surgeons in the intensive care unit in obtaining treatment he thought was needed for AIDS patients; however, this does not specifically relate to bed control. Swinney alleges that in December 1987, while he was in Parkland's emergency room, he was for seven hours denied placement in a hospital room "because of Parkland's HIV bed control policy". First Amended Complaint at 18. No evidence was adduced in support of the quoted allegation.

Dr. Anderson testified that there have never been any bed control policies at Park-land for AIDS, ARC, or HIV-diagnosed patients.[14] Dr. Anderson and Dr. Nightingale also testified that any problems Dr. Barbaro may have encountered with the intensive care unit were due to legitimate differences in medical opinion and working relationships with doctors.

No evidence was presented that a named Plaintiff was injured by the alleged bed control policy. Plaintiffs Seals and Swinney did not testify to any injury due to such alleged policy. Plaintiff Seals did not allege a bed control claim and therefore lacks standing to assert such a claim. *See* Plaintiffs' First Amended Complaint.

The Court concludes that the pleadings and the evidence fail to establish that the named Plaintiffs have suffered an actual or threatened injury as a result of Defendants' alleged bed control policy. The named Plaintiffs, therefore, lack standing to pursue the bed control claim on behalf of themselves or the putative class. Further, there is no evidence that at the time the Class Complaint was filed, and at this time, that Parkland has the discriminatory bed control policies alleged; the claim based on such policies is therefore moot.

Accordingly, the Court DISMISSES the named Plaintiffs' and the purported class's claim alleging discriminatory bed control policies.

### Inadequate and Discriminatory Staffing

Plaintiffs Seals and Swinney, on behalf of themselves and the purported class, seek declaratory and injunctive relief ordering Defendants to supply sufficient staff to the Parkland AIDS Clinic. Plaintiffs contend that the staffing issue constitutes a continuing, "live", disputed question. *See* Plaintiffs' Statement, filed March 7, 1989.

■ In closing argument Plaintiffs' counsel stressed that all of Plaintiffs' complaints about medical care are subordinate to and derivative from the lack of adequate

---

**13.** The Court also finds that the aerosolized pentamidine claim is not an issue which is "capable of repetition, yet evading review." *See, supra,* p. 1387 for analysis.

**14.** The Court emphasizes again that Plaintiffs chose not to cross-examine Dr. Anderson.

staffing at the Parkland AIDS Clinic. The Court notes that Plaintiffs place great importance on this issue, yet only one-half page of their twenty-five page First Amended Complaint—Class Action is devoted to the staffing claim. Amended Complaint at 20. Plaintiffs say that they are denied access to health care because Southwestern does not require residents to rotate through the AIDS Clinic, First Amended Complaint at 2; however, no named plaintiff has pleaded any redressable injury caused by the alleged inadequate or discriminatory staffing. It follows that on the basis of the pleadings no plaintiff has standing to assert this claim.

Assuming *arguendo* that the pleadings support the claim, though, Plaintiffs must still establish they have suffered some injury from inadequate or discriminatory staffing. In his closing argument Plaintiffs' counsel summarized all of the injuries allegedly caused by the inadequate staffing at the Parkland AIDS Clinic. Plaintiffs argue (but did not offer evidence to show) that inadequate staffing leads to the limitation of AZT, denial of aerosolized pentamidine, discriminatory bed control policies, lack of physical examinations, lack of preventive care, and lack of research for new drugs. The Court will review each of these alleged injuries.

With respect to injuries allegedly caused by the denial of AZT, the denial of aerosolized pentamidine and bed control policies, the Court has already disposed of these claims. The Plaintiffs, therefore, may not utilize injuries allegedly stemming from these claims as the basis for standing to assert the staffing claim.

Plaintiffs state they have not been given physicals because of the lack of adequate staffing at the Parkland AIDS Clinic. First, Plaintiffs have not pleaded that they have suffered any actual or threatened injury caused by the lack of physical examinations. Second, Plaintiffs have not demonstrated that Seals or Swinney, or any member of the putative class, have sustained injury due to the lack of physicals. Finally, Plaintiffs have not alleged or established that AIDS patients have been treated any differently from other patients at Parkland with respect to receiving physicals.

Plaintiffs' counsel argued that Plaintiffs have been injured because they have received reactive care, not preventive care, at Parkland. Plaintiffs' counsel also argued that Plaintiffs have been injured, because inadequate staffing at the Clinic prevents the doctors from taking time to research and discover new drugs. Counsel's representations on these points are not supported by the pleadings or the evidence. Further, Plaintiffs have not alleged or established that the care given or research devoted to AIDS patients is inferior to or different from that received by other patients at Parkland. The Court recognizes Plaintiffs' desire to prevent possible future discrimination in providing new drugs and new medical practices to AIDS victims. The federal courts, however, have neither the "power to issue advisory opinions" nor are they "to decide questions that cannot affect the rights of litigants in the case before them." *See, e.g., North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Plaintiffs have not pleaded a claim or presented any evidence of injury or possible injury resulting from failure to provide new drugs or to pursue AIDS research.

Plaintiffs Seals and Swinney and all other eligible patients in the putative class currently have access to appointments, AZT and aerosolized pentamidine at Parkland AIDS Clinic. Plaintiff Seals testified that he can get an appointment at the Clinic within an hour. Plaintiffs, nevertheless, maintain that the Clinic is inadequately staffed, alleging that medical students do not rotate through the Clinic. Defendants explained that medical students are not rotated through the AIDS Clinic, because full-time doctors can provide continuity of care for patients that medical students cannot. Testimony of Dr. Anderson. Defendants also submitted evidence showing that the AIDS Clinic receives a higher percentage of total clinic staff provided (13.6%) in comparison to its percentage of

total clinic visits (2.0%).[15] *See* Defendants' Exhibit # 12.

Although Plaintiffs disagree with the Defendants as to the adequacy of staffing and the non-rotation of medical students at the AIDS Clinic, Plaintiffs have not demonstrated an actual or threatened injury caused by the alleged staffing deficiencies. The Court therefore concludes that the named Plaintiffs lack standing, individually and as representatives of the putative class, to pursue the staffing claim. Alternatively, the Court concludes that the inadequate staffing claim, based on injuries allegedly caused by the limitation of AZT, denial of aerosolized pentamidine and bed control policies, is moot. Accordingly, the Court DISMISSES the named Plaintiffs' and the purported class's claims alleging inadequate and discriminatory staffing at Parkland AIDS Clinic.

### Class Certification

 The Court, having already disposed of the Plaintiffs' claims on standing and mootness principles,[16] need not consider whether class certification is appropriate under Rule 23. *See, e.g., O'Shea*, 414 U.S. at 494 n. 3, 94 S.Ct. at 675 n. 3; *see also* 1 *Newberg* at § 2.09 (lack of standing is cause for dismissal, not class denial). As an alternative holding, however, the Court finds that the named Plaintiffs Seals and Swinney have not satisfied Rule 23 class certification requirements. Standing and mootness concepts are related to the typicality, commonality and adequacy of representation requirements under Rule 23. *See, e.g., General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–159 ns. 13 & 15, 102 S.Ct. 2364, 2370–71 ns. 13 & 15, 72 L.Ed.2d 740 (1982); *see also* 1 *Newberg* at § 2.05.

Rule 23(a)(2) requires that the class share common questions of law and fact. Rule 23(a)(3) requires that the named plaintiffs' claims be typical of the class claims. Rule 23 requirements "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1199 (5th Cir.1984), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984). In addition, a class representative must "possess the same interest and suffer the same injury" as the class members. *Id.; Falcon*, 457 U.S. at 156, 102 S.Ct. at 2369–70.

 With respect to the AZT, aerosolized pentamidine, bed controls and staffing claims, the Court has already concluded that the named Plaintiffs lacked standing to initially pursue these claims and alternatively, that the named Plaintiffs' claims are now moot.[17] The Court finds that the named Plaintiffs, who have not suffered or are no longer suffering any injury as a result of the Defendants' conduct, do not possess claims typical of class members who may allegedly suffer an injury. For similar reasons, the Court also finds that the named Plaintiffs have not satisfied the Rule 23 commonality requirement. *See Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at

---

**15.** Dr. Barbaro, the former director of the Clinic, testified that five doctors are needed to adequately staff the Clinic. Dr. Nightingale, the current director of the Clinic, testified that four doctors are adequate to handle the patient load in the Clinic; two additional doctors recently hired will begin work in July, 1989, to bring the number of full-time doctors in the Clinic up to four. The Court does not consider consequential the difference in number between four doctors and five doctors, in the absence of evidence showing an injury resulting therefrom. Further, Dr. Foster's commitment to the adequate staffing of the Clinic was never questioned.

**16.** The Court also finds that the claims of original named Plaintiffs Riddle and Wakefield have become moot by reason of their deaths and are also hereby DISMISSED. Plaintiff Woodroof, who did not appear at the class certification hearing, asserted two claims in the First Amended Complaint—denial of AZT and denial of aerosolized pentamidine. Plaintiffs have not represented that Woodroof would testify differently from Seals and Swinney. The Court has found that the AZT and aerosolized pentamidine claims are moot as to all possible claimants. Accordingly, the Court also DISMISSES Plaintiff Woodroof's claims.

**17.** The Court has previously determined that the class claims concerning AZT, aerosolized pentamidine, bed controls and staffing are also moot. For purposes of analyzing the appropriateness of class certification, however, the Court has focused on the status of the individual named Plaintiffs' claims and has assumed "live" class claims exist.

2370 n. 13 (commonality and typicality requirements tend to merge).

Plaintiffs argue that the specific claims alleged are merely examples of the type of discrimination to be proven at trial. *Falcon* and its progeny, however, have rejected the across-the-board type of discrimination action Plaintiffs seek to maintain. A "plaintiff who has been subject to [allegedly] injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Vuyanich*, 723 F.2d at 1200 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1983)).

The Court, therefore, alternatively concludes that the named Plaintiffs have failed to satisfy the requirements of Rule 23.[18] Class certification must be denied.

### Claims of Dallas Gay Alliance, Inc. ("DGA")

Defendants have challenged DGA's standing and have asserted that DGA's claims are moot, and the parties have submitted briefs on these issues. *See* Plaintiffs' Memorandum of Law, filed March 20, 1989; Defendants' Brief, filed March 20, 1989; Defendants' Response, filed March 27, 1989; and Plaintiffs' Response, filed March 28, 1989.

Plaintiff DGA, like the individual Plaintiffs, seeks declaratory and injunctive relief against the Defendants. DGA administers the AIDS Resource Center ("the Center") which provides services to HIV-infected persons in the Dallas area. First Amended Complaint ¶ 9. Among its other services the Center serves persons denied care because of the alleged discriminatory practices of Defendants. *Id.* Adopting the Center's alleged injuries as its own, DGA asserts in the First Amended Complaint that it has been injured because the Center has had to expend its resources to alleviate problems caused by the following wrongful practices of Defendants: refusal to provide

AZT, ¶ 45; refusal to provide aerosolized pentamidine, ¶ 67; and Defendants' policy of limiting beds available to HIV-infected, ARC and AIDS patients, ¶ 81.

These are the same claims which are asserted by the individual Plaintiffs and which have been addressed by the Court previously in this opinion. The same reasoning and results apply to the DGA as to the individual Plaintiffs; there is no case or controversy and no redressable injury, and thus no standing to sue with respect to these claims, and the claims are moot.

DGA's Complaint is therefore DISMISSED.

### Conclusion

The Court does not minimize the seriousness of AIDS, AIDS–Related Complex, and HIV-infection. It may be that this community should devote more resources to this menacing and so far irremediable problem; that is a question of important public policy which it is not for this Court to determine.

The Court today decides that Plaintiffs do not have a justiciable complaint against these Defendants. Plaintiffs do not have the constitutionally required case or controversy and their claims are moot. Plaintiffs do not fulfill the requirements for class representation. The claims of each Plaintiff having been considered and dismissed, the Motion for Class Certification is DENIED and this suit is DISMISSED at Plaintiffs' cost.

Judgment will be entered in accordance with this Opinion.

SO ORDERED.

### JUDGMENT

This Judgment is entered pursuant to the Court's Memorandum Opinion and Order dated May 4, 1989.

IT IS ORDERED, ADJUDGED and DECREED by the Court that Plaintiffs take nothing by their suit and that this suit be,

---

18. The original named Plaintiff Woodroof asserted claims alleging the denial of AZT and aerosolized pentamidine. As previously discussed, these claims are now moot, and therefore, Plaintiff Woodroof would also fail to satisfy Rule 23 class certification requirements.

and it is hereby, DISMISSED on the merits at Plaintiffs' cost.

Any relief sought by any party and not specifically granted in this Judgment is DENIED.

## MEMORANDUM OPINION AND ORDER

### On Motion For Attorneys' Fees and Expenses

Before the Court are Defendant Dallas County Hospital District's d/b/a Parkland Memorial Hospital ("Parkland") Motion for Attorneys' Fees and Expenses, filed June 5, 1989; and Plaintiffs' Response thereto, filed July 24, 1989.

### Background

On May 4, 1989, the Court issued a Memorandum Opinion and Order ("the Opinion") concluding that Plaintiffs did not have a justiciable complaint against the Defendants and in the alternative, finding that Plaintiffs did not fulfill the requirements for class certification. Also, on May 4, 1989, pursuant to the Opinion, the Court entered a judgment dismissing Plaintiffs' suit at Plaintiffs' cost. On May 15, 1989, Plaintiffs filed a motion to reconsider the judgment only as to the Court's dismissal of Plaintiffs' pendent state law claims. The Court denied Plaintiffs' motion to reconsider on June 6, 1989, and later on June 14, 1989, denied Plaintiffs' motion to file a reply brief in support of their motion to reconsider. On June 5, 1989, Parkland filed its motion for attorneys' fees and expenses which is presently before the Court. On July 7, 1989, Plaintiffs filed a notice of appeal from the judgment on the merits.

Since Plaintiffs have filed a notice of appeal, the Court must first determine whether it has jurisdiction to decide Parkland's motion for attorneys' fees. If an appeal is taken before the determination of an attorneys' fees issue, the district court retains jurisdiction to decide the fee question. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*

§ 3915 at 402 (Supp.1989) and cases cited therein. Accordingly, the Court concludes it has authority to decide Parkland's motion for attorneys' fees and expenses.

The Court's May 4, 1989 Opinion fully explains the background in this case. Based upon the Court's findings in the Opinion, Parkland moves for an award of reasonable attorneys' fees and expenses pursuant to Federal Rule of Civil Procedure 11 and 42 U.S.C. § 1988. For reasons set forth below, the Court DENIES Parkland's motion.

### Rule 11

Rule 11 provides for the imposition of sanctions to check abuses in the signing of papers served or filed in civil actions in federal district court. *Fed.R.Civ.P.* 11 advisory committee notes. Rule 11 does not apply to all litigation misconduct but only to the signing of a pleading, motion or other paper in violation of the Rule. *See Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1128, 1132 (5th Cir.1987). Once a violation of Rule 11 occurs, district courts are mandated to impose sanctions. *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 870, 876 (5th Cir.1988).

"Rule 11 imposes the following affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion, or other document." *Id.* at 873.

(1) that the attorney has conducted a reasonable inquiry into the facts which support the document;

(2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument 'for the extension, modification, or reversal of existing law,' and

(3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation.

*Id.* at 874.

The certification of the signer is tested as of the time the pleading, motion, or

other paper is signed.[1] *Id.* at 874. The Court recognizes that it "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted." *Id.* at 875 (*quoting* Rule 11 advisory committee notes). The Fifth Circuit also imposes a continuing obligation upon a certifying attorney to review and reevaluate his or her position as a case develops. *Id.* at 874–75.

The Court dismissed Plaintiffs' suit on the merits. Rule 11, however, does not automatically warrant the imposition of sanctions simply for bringing an unsuccessful lawsuit. *National Ass'n of Gov't Employees (NAGE) v. National Fed'n of Fed. Employees*, 844 F.2d 216, 222 (5th Cir. 1988). Rule 11 focuses on an attorney's obligation at the time a document is signed and sanctions "should not amount to an 'accumulation of all perceived misconduct, from filing through trial,' resulting in a 'single post-judgment retribution in the form of a massive sanctions award.'" *Id.* (citations omitted).

In determining a Rule 11 motion, the Court must analyze whether the individual who has certified a document in question has complied with the affirmative duties of Rule 11. Accordingly, the Court will analyze each Rule 11 requirement.

### 1. Factual Inquiry

In the May 4, 1989 Opinion, the Court found with respect to each of Plaintiffs' four allegations that the named Plaintiffs failed to establish individual standing when the class action complaint was filed and further, even if Plaintiffs had standing, each of the specific claims were now moot. Defendant Parkland contends that from the time this case was removed to federal court, Parkland repeatedly "stated to both the Plaintiffs' counsel and this Court that

there was no live controversy to support the Plaintiffs' request for declaratory and injunctive relief." Parkland's Motion at 19. Parkland argues, therefore, that Plaintiffs have repeatedly claimed non-existent factual grounds for this suit in numerous pleadings, motions, reports and briefs.

Plaintiffs sought declaratory and injunctive relief to prevent future alleged wrongdoing by Defendants. The Court recognized in the Opinion "that the Court's power to grant injunctive relief may survive discontinuance of illegal conduct in order to prevent future wrongdoing." At 1384. Although the Court found Plaintiffs had neither pled nor proven actual or imminent injury sufficient to confer standing, this conclusion was based not only on an analysis of Plaintiffs' allegations but also on an analysis of Defendants' actions. Further, the Court's conclusion that Plaintiffs' claims were now moot, was based also in part on an analysis of Defendants' conduct pursuant to the principles in *United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

In determining whether a reasonable inquiry into the facts has been made, the district court may consider such factors as:

the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support for the document; the feasibility of a prefiling investigation; whether the signing attorney accepted the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery.

*Thomas*, 836 F.2d at 875. The Court has carefully considered the foregoing factors in light of the relief requested and the class certification sought. Although the Court ultimately concluded that Plaintiffs' factual allegations were legally insufficient, the

---

1. The Court rejects Plaintiffs' argument that allegations in the July 15, 1988 First Amended Complaint related back to the original complaint filed in state court for purposes of Rule 11 certification. *See* Plaintiffs' Response at 17, 19–20. The Rule 15 relation back doctrine can-

not apply in the Rule 11 context, because Rule 11 imposes affirmative duties as of the date a document was signed and because the Fifth Circuit imposes a continuing obligation of reevaluation upon certifying attorneys.

Court finds that Plaintiffs' counsel made reasonable inquiries into the facts throughout this litigation.[2] As Plaintiffs argue and as the Court agrees in this case, what Parkland describes as an inadequate factual basis may more properly be construed as disagreement with Plaintiffs' position regarding the legal consequences of the factual allegations. *See* Plaintiffs' Resp. at 12.

### 2. Legal Basis

Parkland also contends that various pleadings indicate that Plaintiffs' counsel failed to make a reasonable inquiry into the law regarding class actions, standing and mootness. In determining whether a certifying attorney made a reasonable inquiry into the law, a district court may consider "the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the pro se status of a litigant; and the complexity of the legal and factual issues raised." *Thomas,* 836 F.2d at 875–76.

Plaintiffs' legal positions on standing and mootness were based upon the doctrines that voluntary cessation does not necessarily moot a case and that injuries capable of repetition yet evading review are justiciable. Although the Court did not ultimately agree with Plaintiffs' legal arguments regarding standing, mootness and across-the-board discrimination allegations, the Court concludes that Plaintiffs' arguments were based upon recognized legal principles and/or good faith extensions of the law.[3]

### 3. Purpose

Parkland contends that Plaintiffs' intent of this litigation was to harass Parkland and the other Defendants. Parkland argues that the allegedly harassing nature of

this litigation, therefore, warrants the imposition of sanctions under both Rule 11 and *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n,* 121 F.R.D. 284 (N.D. Tex.1988) (en banc).[4]

The Court stresses that Rule 11 does not apply to all litigation misconduct, but only to the signing of pleadings, motions or other papers. *See supra* pp. 1382–83. The Court notes that Plaintiffs did not file repetitious or excessive pleadings in this case. Indeed, many of Plaintiffs' filings were requested by the Court.

Although Parkland has naturally opposed this litigation, Parkland has not established Plaintiffs' various pleadings were filed simply to harass Parkland. Further, the Court, having found that Plaintiffs' pleadings were reasonably based in fact and law, the Court cannot conclude Plaintiffs' pleadings were filed for some improper purpose. *See NAGE,* 844 F.2d at 223–24 (a filing that is not redundant and is well-grounded cannot generally serve as a basis for imposing sanctions).

In sum, the Court concludes that Plaintiffs' pleadings in this case were reasonably based in fact and law and were not filed for any improper purposes. Having found no Rule 11 violations, the Court declines to impose sanctions. Accordingly, Parkland's Motion for Attorneys' Fees and Expenses pursuant to Rule 11 is hereby DENIED.

### 42 U.S.C. § 1988

Parkland also moves for an award of reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. In the May 4, 1989 Judgment, the Court dismissed Plaintiffs' suit at Plaintiffs' cost. Section 1988 of Title 42 authorizes the Court in its discretion to allow the prevailing party,

---

**2.** The Court rejected Plaintiffs' relation back arguments, *see supra,* p. 1383 n. 1. Plaintiffs' counsel also represented, however, that they made renewed factual inquiries. *See* Affidavits of Nan D. Hunter, William B. Rubenstein and M. William Nelson attached to Plaintiffs' Response.

**3.** The Court also recognizes that Defendants attempted to settle this case with Plaintiffs. *See*

Parkland's Motion at 4–5. Rule 11 does not require or even permit that a losing party be sanctioned for having failed to settle at an early stage. *See NAGE,* 844 F.2d at 222–23.

**4.** Although Parkland alleges that Plaintiffs' conduct should be sanctioned under *Dondi,* Parkland does not move for sanctions under *Dondi* and therefore, the Court does not address *Dondi* in this Opinion.

other than the United States, reasonable attorneys' fees as part of the cost. The Court can award attorneys' fees to a prevailing defendant if it finds that the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 14–15, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980).

To support the assessment of fees, "[t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation." *Id.* at 14, 101 S.Ct. at 178. The fact that the Court dismissed Plaintiffs' suit is not in itself a sufficient justification for the fee award. *See id.* For the same reasons set forth in the Court's analysis of Rule 11, the Court concludes that Parkland is not entitled to an attorneys' fees award under 42 U.S.C. § 1988. Accordingly, the Court hereby DENIES Parkland's Motion for Attorneys' Fees and Expenses pursuant to 42 U.S.C. § 1988.

SO ORDERED.